BROWN (O'BRIEN COUNTY v.). See Case No. 10,399.

BROWN (O'NEAL v.). See Case No. 10,511.

---

## Case No. 2,024.

### BROWN v. OVERTON.

[1 Spr. 462;[1] 7 Am. Law Reg. 413; 42 Hunt, Mer. Mag. 335.]

District Court, D. Massachusetts. March Term, 1859.

SEAMEN—INJURY IN SERVICE OF SHIP — COMPENSATION.

1. A seaman receiving an injury in the performance of his duty, must be cured at the expense of the ship.

[Explained in The Ben Flint, Case No. 1,299. Cited in Myers v. The Lizzie Hopkins, Id. 9,993; Tomlinson v. Hewett, Id. 14,087; Peterson v. The Chandos, 4 Fed. 651; The W. L. White, 25 Fed. 504.]

[See Brown v. The Bradish Johnson, Case No. 1,992, note.]

2. On a voyage from Calcutta to Boston, and twenty-five days before passing within sight of St. Helena, a seaman fell from aloft and broke both legs: Held, that it was the duty of the master to have put into St. Helena, for the cure and relief of the seaman.

[Cited in The Ben Flint, Case No. 1,299.]

3. The master was also held responsible for neglect during the passage, and after reaching Boston.

[Cited in The City of Alexandria, 17 Fed. 394.]

In admiralty.

J. H. Prince, for libellant.

T. H. Russell, for respondent.

SPRAGUE, District Judge. The libellant was a seaman, and the respondent master, of the ship Modern Times, on a voyage from Calcutta to Boston.

When about fifty days out from the Sandheads, the libellant, while reefing a topsail in the night time, was thrown from the yard by the sudden motion of the sail and violence of the wind, and by his fall broke both legs below the knees. There was no person on board skilled in medicine or surgery; but the master, with the aid of a passenger and one of the crew, set the bones

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

and secured them by bandages and splints, as well as he could, and the libellant was then placed in a hammock in the forward cabin, whence, after three or four days, he was removed to the forecastle, and there continued, lying in his hammock, until four days after the arrival of the ship in Boston. He was then carried to the Massachusetts Hospital. It was there found that the left leg was somewhat distorted, but this evil was corrected by the eminent surgeons of that institution. The right leg was in a much worse condition. The foot was turned out, so as to be at right angles with its natural position, and this it was found impossible to remedy. This distortion, and the deformity and disability arising therefrom, must remain for life.

There are three grounds of complaint against the master: 1st, that he did not put into St. Helena; 2d, want of proper care and attention during the passage; 3d, neglect after arriving at Boston.

As to the first: The accident happened on the 30th of March, 1858, the vessel then being twenty-five days sail from St. Helena. There was a conversation between the master and officers, and the only passenger on board, as to the necessity of going into that island; the question being whether, if they retained the libellant on board, mortification would take place in passing the equator. The master decided not to go into St. Helena, although he intended to make the island for the purpose of correcting his longitude. On the morning of the 25th of April, they made St. Helena distant about forty miles, having passed it in the night, but the wind was such that they could have reached it, even then, in eight or ten hours. Some question has been made as to the degree of surgical skill which could have been found at St. Helena; but there is no doubt that some degree of professional skill, as well as nursing and rest, could there have been obtained, and to this the libellant was entitled. A seaman disabled in the service of a ship is to be cured at the expense of the ship. To this his right is as perfect as to food or wages. It is incumbent upon the master to furnish means of cure, and to use all reasonable exertions for that purpose. Scarcely a case can be presented, where this obligation applies with greater force than the present. This seaman, at the command of his officer, had exposed his life and his limbs for the preservation of the ship. He was thrown from the yard-arm, and both legs were badly fractured. There was no surgical skill on board, and the unceasing motion of the ship, and the accidents and discomforts to which he was necessarily exposed, were unfavorable to his cure. The master intended to go within sight of St. Helena, and if he had shaped his course to go into port, he might, with only a few hours detention, have consulted the American consul, obtained surgical aid and advice, and ascertained how far it was necessary, or would be useful, for the libellant to be left on shore. The reason assigned by the master, since his return, for not having left this seaman at St. Helena, is that it would have occasioned expense. This presents not the least extenuation. It is merely saying that, if he had performed his duty, the owners would have been subjected to a burden which the law imposes.

The master ought to have gone into St. Helena, to have given to the seaman the means of cure which that place afforded, and for this neglect the libellant is entitled to recover such damages as he sustained.

As to the second ground of complaint: No blame attaches to the master during the first three or four days, nor for removing the seaman to the forecastle. It is not shown that the cabin was a better place. After his removal to the forecastle, the master visited him occasionally, but not often, and the steward carried him food regularly from the cabin table. This was all the attention afforded him by the master's order. No one was directed to render him any further service.

The accident happened on the 30th of March. The vessel did not arrive in Boston till the 10th of June. For more than sixty days he lay in his hammock, in the forecastle, utterly helpless, and for a portion of the time in great pain. Yet, whatever his wants or his sufferings, there was no one there whom he had a right to call upon for relief. He was left to the chance and voluntary attentions of other seamen. No reason is assigned for this neglect. The ship was not short handed, and the weather during most of the passage was mild. Some one of the ship's company might have been designated to care for and watch over this disabled seaman, and relieved from his other duties, except in case of emergency. That this would have alleviated the sufferings of the libellant, there can be no doubt; how far it might have prevented the distortion of the right leg, it is impossible to state, as it cannot be known whether that misfortune was the result of the original imperfect setting of the bone, or of subsequent displacement. And it is now uncertain how far it could have been remedied on shipboard. I think the libellant did not receive that attention during the passage, which the master could and ought to have furnished.

The third ground of complaint is neglect after the arrival of the vessel at Boston. The ship came to anchor at that place, on the afternoon of Thursday, and hauled into the wharf about one o'clock on Friday, on which day the crew were discharged and left the ship. The master left on Saturday, and did not return until Monday. No one remained by the ship but the mate, who paid no attention to the libellant, except sending him food from on shore. It rained on Saturday and Sunday. The forecastle was a scene of confusion and discomfort, from the

seamen preparing and taking away their luggage, and from rigging being put into the forecastle, and the condition in which it was left.

On Monday, the master proposed to send the libellant to the Marine Hospital at Chelsea, but at his request, and by the interposition of a friend, he was carried to the Massachusetts Hospital. It is alleged that a permit to carry this seaman to the Marine Hospital could not be obtained till Monday; but of this there is no proof, and I cannot believe that a seaman arriving in a disabled condition has been kept out of the Marine Hospital for three or four days, from mere official formality.

But even if it had been so, it would not excuse the master. Competent surgeons were at hand, and one should have been called immediately, and suitable nursing and lodging also should have been provided at the expense of the ship, either at the Massachusetts Hospital, or elsewhere. The master neither performed this duty himself, nor made report to the owners, that they might assume it; and for this omission he must be held responsible.

It remains only to determine what amount of damages shall be awarded. The libellant is entitled to indemnity for all that he has suffered from the omission of the master to go into St. Helena, and from his culpable neglect during the passage, and after arriving at Boston. The first ground is that mainly relied upon. It is insisted that the permanent deformity and disability are owing to that unjustifiable omission. The accident happened on the 30th of March. On the 25th April, the vessel could have put into St. Helena. Were the bones of the right leg then so united and consolidated that they could not have been restored to their natural position, and the permanent distortion have been prevented? Upon this question, two of the surgeons of the Massachusetts Hospital have been called as witnesses. One gave an opinion in the affirmative, and the other in the negative. The former, however, was expressed with more confidence; the latter not being unqualified.

The preponderance of evidence is in favor of the assertion that the curative process had not gone so far in twenty-six, or even thirty days from the accident, but that the distortion could have been remedied by surgical skill. This, however, is doubtful. It is also uncertain what degree of surgical skill could have been found at St. Helena. These doubts would have been prevented, if the master had performed his duty. By going into that port, it would have been ascertained what could be accomplished. Still I cannot give to the libellant the same measure of damages, as if it were certain that the whole permanent injury arose from the master's default. I must make a considerable deduction by reason of the uncertainty that remains in this respect. What

the libellant has certainly lost, is the chance, or probability, of a remedy or cure, more or less complete, by being carried into St. Helena. And for this loss, as well as for what he has suffered on the minor grounds of complaint, he is entitled to a full indemnity. Decree for $600 and costs.

NOTE [from original report]. From this decree the respondent appealed, but before the hearing the case was settled by the parties.