CALLICOT (UNITED STATES v.). See Case No. 14,710.

CALLICOTT (McLEOD v.). See Case No. 8,897.

CALLIOPE, The (PARKER v.). See Case No. 10,729.

CALLISON (MOUNTE DIABLO MILL & MINING CO. v.). See Case No. 9,886.

———

## Case No. 2,324.

### CALLON v. WILLIAMS.

[2 Lowell, 1.][1]

District Court, D. Massachusetts. February, 1871.

INJURY IN SERVICE OF SHIP—DISCHARGE BY CONSUL—RIGHT TO WAGES — RIGHT TO BE CURED—EVIDENCE—CONSUL'S CERTIFICATE.

1. Where a second mate was called on by the mate to help in suppressing a serious riot on board a ship lying at the wharf in a foreign port, and took a loaded pistol, which the mate warned him not to use, and in the scuffle the pistol was accidentally discharged and wounded the second mate himself,—held, he was wounded in the service of the ship.

[See note to Case No. 1,992.]

2. A consul at a foreign port has no power to discharge a seaman for disability arising from wounds contracted in the service of the ship.

[Cited in The W. L. White. 25 Fed. 504; Raymond v. The Ella S. Thayer, 40 Fed. 903.]

3. A seaman so situated has a right to be cured and sent home at the expense of the ship, and his wages continue to the time of his return, not exceeding the length of the voyage.

[Cited in The W. L. White, 25 Fed. 505.]

4. The statutes authorizing consuls to discharge seamen with their own consent do not apply to men who are so ill as to be unable to continue the voyage.

[See Pool v. Welsh, Case No. 11,269; The Rupee, Id. 12,140; Heynsohn v. Merriman, 1 Fed. 728.]

5. The certificate of the consul, that the seaman was "duly" discharged in such a case, is of no value as evidence.

6. Where the master sent the clothes of a seaman, who was left in hospital at a foreign port, to the consul's office, and the evidence did not

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

show that the seaman received them,—*held*, he could recover their value of the ship-owner.

[See Nevitt v. Clarke, Case No. 10,138.]

[In admiralty. Libel by Henry Callon against Elisha Williams.]

On the 19th of July, 1869, the libellant was shipped at Boston as second mate of the ship Puritan, for a voyage to Melbourne and elsewhere, and back to the United States. That voyage ended at San Francisco in March, 1870. The ship arrived at Melbourne about the 5th of November, 1869; and on the 8th of that month, while the vessel was lying at the wharf, some trouble occurred between the first mate and some seamen and their friends from shore, who were drunk and disorderly. The first officer called up the libellant from the hold to assist in restoring order. The libellant took a pistol from his state-room, in order, as he said, to protect himself, and to frighten the men into obedience, and by some accident shot himself in the hand, inflicting a serious wound, which was not fully healed at the time of the trial. A surgeon was sent for, and by his direction the libellant was taken to the hospital. The ship paid the surgeon's bill, and the hospital dues for eleven days, and then the man was discharged from service, and three months' wages were paid into the hands of the consul. The libellant remained in hospital for some weeks longer, and afterwards at Melbourne, until about the 4th of April, 1870, when he was sent home by the consul by way of San Francisco. The master ordered the second mate's clothes to be sent to the consul's office; but the evidence tended to show that they did not come to the actual possession of the man himself. All the extra wages were expended in the care, attendance, and support of the libellant at Melbourne.

C. G. Thomas, for libellant.

S. Wells, for respondent.

LOWELL, District Judge. There is some conflict of evidence as to the precise way in which this unfortunate wound was received; but the tendency of the whole testimony is, that it was not incurred wantonly or recklessly, but in the course of what the second officer considered to be his duty. He was summoned hastily to quell what at sea would have been a mutiny, though at the wharf it ought, no doubt, to have a milder name. He says he was violently assaulted by the drunken men, and was knocked down and kicked in the side. The emergency was sudden, and so serious, that the other man, who was called on to aid the first mate, was frightened and did nothing, and the mate himself was presently obliged to call in the police. Assuming, then, as I do, that the first officer, when he saw the pistol, told the second officer not to use it, and that this was a very proper and humane order, yet I do not find the libellant intending to disobey it. On the contrary, the discharge of the pistol appears to have been accidental.

Under these circumstances, it does not appear very gracious for the owners to strain any doubtful appearances against the only man who stood by the mate, and to insist that he went beyond his duty in their service. He was not enforcing a personal right of his own, nor carrying out any personal quarrel. I cannot hesitate to say that this was an injury incurred in the service of the ship.

Then his general right under the maritime law would be to have his wounds cured at the ship's expense, and to receive his wages during the time of his disability, or, at least, during a reasonable time, not exceeding the length of the remainder of the voyage. Harden v. Gordon [Case No. 6,047]; The George [Id. 5,329]; Chandler v. Grieves, 2 H. Bl. 606, note; The Latona [Shakerley v. Pedrick, Case No. 12,699]; The Atlantic, 1 Stu. Adm. 125. There is no evidence of any stipulation in the shipping articles changing or abridging this right. The contract usual in the whaling service gives the officers and men who are discharged for such a cause only wages pro rata; and the validity of such a contract has been recognized by this court in Brunent v. Taber [Case No. 2,054], and in other cases. An English statute has lately adopted a similar rule. The ship, under that form of contract, remains liable for the expense of the man's sickness and of his return home; and in Brunent v. Taber it was held, that the seaman having been discharged by the consul by reason of the disability, and without being consulted, the two months' extra wages paid to the consul could not be charged to him, unless he had received them.

In this case there is a question whether the second mate was discharged with his own consent. The consul certifies that he was "duly" discharged; and the master says he told him he should be obliged to discharge him, and should send his extra pay and his clothes to the consul; that he does not remember what answer was given, but that the libellant made no objection, and he supposed he acquiesced. The libellant denies that he ever assented, or, indeed, ever heard any such conversation. It seems probable that some such notice was given in order to satisfy the consul, and I shall assume that the libellant, being notified, did not protest. The statutes authorizing the discharge of seamen, with their own consent, were not intended to apply to a case in which the seaman is confined to his bed on shore, at the time the vessel is to sail, by a severe injury or illness incurred in the service of the ship. Such a discharge is nothing more than a recognition of the fact that he cannot go to sea. The statute was intended for a case in which there is some choice exercised to go or stay. And there is no consideration for a relinquishment of the seaman's well-established rights, unless, perhaps, where the two months' extra wages would or might

be as much as he would otherwise be entitled to. If a fair contract with full understanding should be arrived at, it might be upheld though the man were more or less ill; but that he should lose the right to be cured, and sent home from Australia, by a mere assent to the necessity of leaving him behind, is not within the true intent of the statute. A district judge of great experience is reported to have held that the consul's certificate of the seaman's consent to be discharged is conclusive evidence thereof. Lamb v. Briaid [Case No. 8,010]. But as the consul has not so certified in this case, that question does not arise.

The libellant is not to have damages as for a wrongful discharge, because it appears to have been entirely fit to leave him in the hospital; but he may have wages to the date of the ship's return to San Francisco, which appears to have been a port of discharge within the meaning of the contract, and the port where the seamen were, in fact, discharged. The precise date of the termination of the voyage was not given in evidence, but it was said to be about the 1st of March. This would give three months and a half at $35; that is, $122.50. Concerning the value of the clothes there is much controversy; and what became of them is not shown; but as no one knows that they ever reached the consul's office, and as the libellant swears he never saw them, he is entitled to recover their fair value. The libellant testifies to an amount of clothing which is shown to be more than men in his position usually take to sea, and more than he seemed to possess, on the testimony of the respondents. But his evidence is, to some extent, corroborated by his boarding-house keeper, and the negative evidence is not full or precise. Allowing for the depreciation which all such property suffers, it seems just to estimate the loss at $150; which, added to the wages, $122.50, makes $272.50. I have not deducted the extra wages, because they appear to have been consumed in paying the hospital dues, passage-money, and other expenses for which the ship was liable, the case being in this respect like Brunent v. Taber, cited above.

Decree for libellant for $272.50 and costs.