## THE W. L. WHITE.[1]

### JANSEN *v.* THE W. L. WHITE, etc.

*(District Court, S. D. New York.* October 31, 1885.)

1. INJURED SEAMAN—EXPENSE OF CURE—DISCHARGE IN FOREIGN PORT—DING-LEY ACT.

   Where a seaman is hurt in the service of the ship, his inchoate right to recover the expenses of his cure from the ship accrues at once, and is not affected by his subsequent discharge while sick ashore, under the act of June 26, 1884, c. 121, § 3, by a consul in a foreign port. Whether such a discharge is valid, *quære.*

2. DISCHARGE IN FOREIGN PORT—EXTRA MONTH'S WAGES.

   The extra month's wages allowed by the above statute is not in lieu of a vested right of action for a tort, or for the expenses of cure.

3. STATEMENT OF CASE.

   Libelant, a seaman on the schooner W., was hurt in the service of the vessel at Havana. He was then discharged on the application of the master by the consul, who collected for him one month's extra wages This, together with his arrears of wages, amounting together to $41.73, was afterwards applied by the consul to the expenses of his cure and return. On suit brought against the vessel to recover his wages to the end of the voyage, *held,* that the vessel was liable for the expense of his cure; that libelant, having paid it out of his wages, should be considered as having advanced it to the ship, and was entitled to recover it in this action; that the form of the libel should be deemed amended to correspond with the proof, and decree given for $41.73.

4. SEAMAN—NECESSARIES—SECTION 4581, REV. ST.

   Section 4581, Rev. St., as amended by the seventh section of the act of June 26, 1884, provides that "if any seaman, after his discharge, shall have incurred any expenses for board or *other necessaries* at the place of his discharge, * * * such expenses shall be paid out of the arrears of wages and extra wages received by the consular officer, which shall be retained for that purpose, and the balance only paid over to such seaman." *Held,* that the words "other necessaries" refer to the ordinary expenses of a well seaman incurred after his discharge, who has no special claim against the ship on account of previous sickness or injury, and do not exempt the ship from previous liability for a seaman's cure incurred before the discharge.

In Admiralty.

*Alexander & Ash,* for libelant.

*Henry D. Hotchkiss,* for claimants.

BROWN, J. The libelant shipped on board the schooner W. L. White for Havana and back, as seaman, for wages at the rate of $16 per month. He served on board from December 8, 1884, to the twenty-eighth of January, 1885, on which day, having received a hurt while in the service of the ship at Havana, he was sent to the hospital. Upon the application of the master to the United States consul at that port, the seaman was on the same day discharged, under section 4583 of the Revised Statutes, as amended by section 3 of the act of June 26, 1884, c. 121, known as the "Dingley Bill." The consul collected at the time one month's extra wages from the ship, and the arrears of wages due the seaman, $25.73, making together $41.73.

[1] Reported by R. D. & Edward G. Benedict, Esqs., of the New York bar.

The ship arrived in New York on the twenty-eighth of February. The expenses of the seaman for 28 days in the hospital, together with his passage home, amounted to $48, to the payment of which all the arrears of wages collected, and the extra wages, were applied by the consul. On his return the seaman has libeled the schooner for his wages for the voyage up to the twenty-eighth of February, less the sum of $3.25 advanced. Prior to the recent amendment of the statute the consul had no authority to discharge a seaman abroad upon the application of the master in consequence of any hurt or injury received in the service of the vessel; and an alleged consent given by a seaman seriously sick or injured and confined ashore, was held by Judge LOWELL to be inoperative. *Callon* v. *Williams*, 2 Low. 1.

It is doubtful whether any additional authority is conferred upon consular officers by the third section of the act of June 26, 1884, known as the "Dingley Act." The third clause of that section declares that "whenever a seaman is discharged by a consular officer in consequence of any injury received in the service of the vessel, such consular officer shall require the payment by the master of one month's extra wages over and above the wages due at the time of the discharge." By the maritime law, a seaman hurt in the service of the ship is entitled to wages to the end of the voyage, and also to the expenses of his cure, so far as cure is possible. . If this seaman had come home in the ship he might have been discharged at the end of the voyage, so far as the payment of wages was concerned; but that discharge would not have operated to absolve the ship from her obligations to him, under the maritime law, to pay for all the additional expenses of his medical treatment and cure, within a reasonable time afterwards. This was expressly adjudicated by STORY, J., in *Reed* v. *Canfield*, 1 Sum. 195, 197. See *Brown* v. *Overton*, 1 Spr. 462; *The Laura*, 2 Sawy. 245; *The City of Alexandria*, 17 Fed. Rep. 390, 393; *The Centennial*, 10 Fed. Rep. 397; *Croucher* v. *Oakman*, 3 Allen, 185; *Couch* v. *Steel*, 3 El. & Bl. 402; *The Enchantress*, 1 Hagg. 395. But even if the discharge were held authorized by the language of section 3 of the act of June 26, 1884, above quoted, the act does not specify the consequences of such a discharge. It requires the payment of only one month's extra wages. This, in fact, corresponded with the precise time within which the voyage was afterwards completed. The discharge, if authorized, would doubtless bar all claims for wages subsequent; and the "discharge" would itself imply that result.

By section 4552, the legal effects of a discharge by a shipping commissioner at the end of the voyage are stated in detail. The second section declares that it "shall operate as a mutual discharge and settlement of all demands for wages between the parties thereto on account of wages, in respect of the past voyage or engagement." A discharge by the foreign consul should have the same effect and no more. Section 4552 does not absolve the vessel from liability for

the expenses of the seaman's medical treatment and cure for a hurt received prior to the discharge, nor does the act of June 26, 1884. This is the construction put by Judge LOWELL on the British shipping act in the case of *The Magna Charta*, 2 Low. 136, and is the proper construction, I think, of our own statutes. If a cause of action in favor of the seaman had already accrued for injuries received by violence, or cruel usage, or insufficient food, a discharge at the end of the voyage, or by a consul in a foreign port, would not affect his right of action. Several of the cases above cited are of that kind. It is the same with his claim for the payment of the expenses of cure for a hurt received in the service of the ship prior to his discharge. The inchoate right of action has already accrued to the seaman, which is not affected by a discharge from further claim to wages. Section 4581, as amended by the seventh section of the act of June 26, 1884, provides that "if any seaman, after his discharge, shall have incurred any expense for board or *other necessaries* at the place of his discharge, before shipping again, or for transportation to the United States, such expense shall be paid out of the arrears of wages and extra wages received by the consular officer, which shall be retained for that purpose, and the balance only paid over to such seaman."

The words "other necessaries," though literally broad enough to cover expenses of cure in the case of a previous hurt, are equally applicable to the ordinary expenses of a seaman who is uninjured and well, and has no such special claim against the ship. There is nothing in the act of June 26, 1884, intimating any intent to absolve the ship from her legal obligations to an injured or sick seaman, beyond, possibly, the wages to the end of the voyage that might otherwise have been recovered, instead of one month's extra pay after discharge. Section 4600, as amended by the same act, provides that the consular officer, in case of apprehension of a seaman deserting on account of "unusual or cruel treatment, shall discharge him;" requiring payment of one month's extra pay. It is impossible to suppose that congress intended that one month's wages should be taken as a satisfaction of whatever claim to damages might exist for any actual injuries inflicted by such cruelty, or as a bar to such a claim. The "discharge" must be deemed to leave such claims unaffected. The words "other necessaries," in section 4581, are in my judgment to be held to refer to the ordinary expenses of a well seaman who has no special claim against the ship on account of previous sickness or injury. Where these claims exist for the seaman's subsequent treatment, although in one sense they are incurred by the seaman, yet they are in law really incurred on account of the ship, because she is already liable for them. *Callon* v. *Williams*, 2 Low. 1. If vessels could in this way relieve themselves from all charges for treatment of sick or wounded seamen, it would be an extreme hardship upon seamen, and would be liable to lead to abuses. The effect in this instance has been to deprive the seaman of the entire fruits of the voyage.

An act like that of June 26, 1884, amending the prior law, and designed in part for the benefit of seamen, ought not to be construed to their prejudice any further than its language requires. As it does not expressly absolve the vessel from her liability previously incurred for the medical treatment and cure of the discharged seaman, it should not be construed as doing so any more than an ordinary discharge at the close of the voyage would do so, nor any more than it would bar a vested right of action for a tort. The sum of $41.73, applied by the consul to the payment of the seaman's hospital expenses and return home, was really the seaman's wages taken and applied to an expense which the ship was bound to pay, but has not paid. It must be deemed paid by the seaman on the ship's account, which the ship is therefore bound to reimburse. Practically, it is the same as though none of his wages had been paid.

There being no dispute as to the facts, the form of the libel should be deemed amended to correspond with the proof, and a decree allowed for $41.73, with costs.