## PETERSON v. UNITED STATES.

District Court, W. D. Washington, N. D. April 26, 1928.

No. 11304.

I. Seamen ⬤➾6—Boatswain impliedly warranted bodily and mental fitness to discharge duties, unless waived by master in good faith, without collusion or imposition.

There was an implied warranty that seaman was. fit, bodily and mentally, to discharge duties of boatswain at time of signing as such, unless waived by master in good faith, without collusion or imposition by seaman.

2. Seamen ⬤➾26—Evidence held to show that injured boatswain, suing for wages, was not guilty of fraud. imposition, or deception as to physical condition.

In libel to recover wages as boatswain to end of voyage, evidence that libelant advised master that he had a broken jaw, which was wired, and told him of his qualifications as seaman and ability to discharge required work, and that such work was satisfactorily performed, held to preclude finding that he was guilty of fraud, imposition, or deception, or unable to perform work.

3. Seamen ⬤➾26—Evidence held to show that boatswain, suing for wages, was prevented from continuing voyage by new injury to jaw, broken before entering employment.

In libel by boatswain to recover wages to end of voyage, evidence held to show that libelant was not incapacitated by infection of jaw, which was broken in fight before entering employment, but suffered a new injury, but for which he could have continued voyage.

In Admiralty. Libel by Hans Peterson against the United States. Decree for libelant.

Winter S. Martin and Arthur Collett, Jr., both of Seattle, Wash., for libelant.

Bronson, Robinson & Jones, of Seattle, Wash., for the United States.

NETERER, District Judge. Libelant seeks to recover wages to the end of the voyage. He was taken from the ship July 26, 1924, at Hong Kong, and the ship's voyage ended October 26, following, at the port of New Orleans.

The respondent denies liability, and says that by mutual agreement libelant was discharged and his wages paid in full at Hong Kong, and further contends that the libelant was not able-bodied at the time that he entered the employment, and not able to discharge his duties, and that he was taken from the ship and placed in the hospital because of injuries received on land by him prior to his engaging with the respondent.

The evidence shows that the libelant was not discharged at Hong Kong. The ship's articles show that libelant signed on the 16th day of July at Manila as boatswain, and at Hong Kong was "left in the hospital and wages, amounting to $26, deposited at consulate." The American vice consul at Hong Kong, August 7, 1924, certifies as follows: "This is to certify that Hans Peterson, late bosun of the SS Radnor, was left in the hospital in Hong Kong with a broken jaw. Mr. Peterson has not been discharged from the SS Radnor."

[1, 2] There was, of course, an implied warranty that the seaman was fit, bodily and mentally, to discharge the duties of boatswain, unless this implied warranty was waived by the master in good faith and without collusion or imposition of the seaman. Libelant testified that he told the master his condition, told him his jaw had been broken and was wired, and that he could not do heavy work; that he had been engaged on the steamship Madison, as boatswain. The master testified that libelant told him that he had been employed as boatswain on the steamship Madison, and that, while at port, libelant and a friend at a dance hall at Santa Ana got into difficulty; the friend was killed and the libelant had a broken jaw. The libelant had been in the hospital a week or more; he had "one fracture in each horizontal ramus," and the doctor says, "It is my recollection that he had some swelling on one side, or some infection," and also thought the libelant should have remained in the hospital, although it was possible for him to "go ahead and have no trouble—take the wires off at the end of three or four weeks—four weeks probably, and have no further trouble, * * *" and did not know he had left until he saw him on the Radnor, and "saw him bossing a gang." "He talked like a Scotchman, with his teeth together." Libelant was a young, strong, "good-sized" man. He performed the duties of boatswain satisfactorily from the 16th until he left the ship on July 26. On the 24th of July a rough sea was encountered, caused by storm, and libelant says that in going to between-decks to care for cargo, which was tipped over, he bumped his head against a post or pipe and injured his

jaw—loosened the wire. When the boat arrived at the port of Hong Kong, libelant reported to the master that the wires on his jaw were loose, and he wanted to see a doctor. The doctor required him to go to a hospital, where he remained until the 7th of August.

I think, under all of the circumstances disclosed, that the libelant acted fairly with the master, advised him of his condition, told him of his qualifications as a seaman, and ability to discharge the required work, *and he did do the work*. The master says that *the work was satisfactorily performed*. Under this state of facts, I do not think that it can be reasonably assumed that the libelant was guilty of any conduct bordering on fraud, imposition, deception, or inability to perform his work. Libelant also says the master called at the hospital to hire him on his ship. This the master denies, but the doctor says he was introduced to the master at the hospital, but had "only a casual conversation about how Peterson was getting along." "I doubt whether I talked to the patient and the master more than two minutes."

[3] The master also says that the libelant told him "he would not be able to chew anything, * * * to eat any heavy food, but soup and things like that were all right for him." The doctor states that the jaw would not interfere with work, but inability to work would result from lack of nourishment. The testimony seems to import a full discussion of libelant's condition and full understanding of his physical status. The master also corroborates the libelant as to rough weather one night, which upset some oil cases. This, the master says, was about two days before they arrived in Hong Kong. The reasonable deduction to be drawn from all the circumstances and evidence is that a new injury was suffered, as claimed by the libelant. He left the ship at least 18 days after the first injury. If the jaw had been infected when he went aboard, the jaw would have been in a much worse condition than it was. The strong, healthy condition of libelant served him well, and I have no doubt that libelant suffered a new injury on the night of the storm, as he says, and but for which he could have continued the voyage.

The appearance of the libelant upon the witness stand indicated that he was telling the truth; he seemed to be fair, not evasive, answered directly to the point, and, in the main, is corroborated by all of the circumstances and testimony as to his physical and mental fitness and efficiency.

The Pocahontas (D. C.) 15 F.(2d) 405, 1927 A. M. C. 184, and The Owego, 1925 A. M. C. 349, are clearly not in point, as the articles show, as well as the certificate of the American consul, that the seaman was not discharged; and The Sarmatia, 1927 A. M. C. 925, is likewise distinguished, in that the libelant fully disclosed his physical condition with relation to the broken jaw and the circumstances under which he received it, and the things he could eat, to the master, and fully discharged the duties of boatswain in an efficient manner.

Decree for the libelant.