### TRENT et al. v. HUNT et al.
#### No. 349.

District Court, S. D. Indiana, Indianapolis Division.

June 12, 1941.

Hayden C. Covington, of Brooklyn, N. Y., and Scott Ging, of Indianapolis, Ind., for plaintiffs.

George N. Beamer, Atty. Gen., of Indiana, Urban C. Stover, Walter Lewis, Asst. Attys. Gen., E. Ralph Himelick and John J. Chrisman, both of Connersville, Ind., for defendants.

Before EVANS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

PER CURIAM.

The plaintiffs in this action are seeking to enjoin the defendants from enforcing three (3) certain criminal statutes in the State of Indiana, alleging "that each of the three above described state statutes is unconstitutional and void, as construed and applied by defendants against plaintiffs because, as so construed and applied, each of said statutes has been used and will be used unlawfully to deny and deprive plaintiffs and others of Jehovah's witnesses of their 'civil rights' of freedom of speech, of press, of assembly, and freedom to worship Almighty God according to dictates of their consciences, all contrary to the Federal Constitution, Fourteenth Amendment, Section 1."

Plaintiffs prayed for an interlocutory injunction, and pressed the same; therefore, a statutory three-judge court was organized pursuant to the provisions of Section 266 of the Judicial Code, 28 U.S.C.A. § 380. A hearing was had by such court upon the motion of plaintiffs for an interlocutory injunction, the evidence was adduced, consisting of affidavits filed by both the plaintiffs and the defendants, and by some oral testimony. The interlocutory injunction was denied, and the cause is now submitted on final hearing.

It will not be necessary to restate the facts, because, pursuant to Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, there is filed simultaneously herewith a special findings of fact, from which findings the court has stated its conclusions of law. For the purposes of this memorandum it is sufficient to say that each plaintiff is a member of a large group known as Jehovah's witnesses, and, during the month of June, 1940, they were engaged in their activities in Fayette County, Indiana, more especially in Connersville, the county seat of that county and a city of approximately thirteen thousand population; that objection was made by many of the citizens of that city to such activities, and, as a result thereof, affidavits were filed in the Fayette Circuit Court by the defendant, Chrisman, as prosecuting attorney, charging the plaintiffs, Trent and McKee, and other members of their group, with having violated certain criminal statutes of the State of Indiana; that said Trent and McKee were tried to a jury in said circuit court upon a charge of having violated the Riotous Conspiracy statute, convicted and sentenced to prison. An appeal was perfected by them to the Supreme Court of Indiana, the court that has exclusive jurisdiction over criminal appeals from circuit courts in the state. They were released on bond, and that appeal is now pending. While there has been some delay in procuring the transcript of the evidence which constitutes the bill of exceptions to be filed in the Supreme Court in that case, yet such delay has not been occasioned by the acts or conduct of the defendants, or either or any of them. In fact, the Attorney General of Indiana, whose duty it is to represent the state in the Supreme Court in all appeals in criminal cases, has co-operated with the plaintiffs and has voluntarily agreed in that court to an extension of time for the filing of the bill of exceptions. The delay seems to have been occasioned by a misunderstanding on the part of the court reporter in the Circuit Court as to the preparation of the transcript, or a failure upon her part to follow the instructions of the plaintiffs' attorney in the preparation thereof. In any event, the actions of the court reporter cannot in any manner be attributed to any of the defendants, or to any other officials or laymen of Fayette County, or of the city of Connersville. She was solely responsible for her acts.

The complaint in this action was filed on December 27, 1940. A hearing was had on plaintiffs' petition for an interlocutory or preliminary injunction on January 13, 1941, and on March 17 following a judgment was entered denying such injunction. There were no activities on the part of plaintiffs or other members of their group in the city of Connersville or in Fayette County following the denial of such injunction until on Sunday, April 6. Neither had there been

any activities upon their part in that city or county since during the summer of 1940, when they encountered difficulties out of which grew the prosecution of Trent and McKee in the Circuit Court heretofore referred to.

For the purpose of conducting the activities of Jehovah's witnesses, the United States is divided into regions, zones and communities. A region is comprised of many states, or parts of states, and their activities in such region are supervised and directed by a member who is known as a regional servant. A region is divided into zones, and each zone is comprised of several states, or parts of states, and their activities in such zone are supervised and directed by a member who is known as a zone servant. The zone may be divided into communities and the members living therein constitute a company. On April 6, and for some time prior thereto, and at the present time, the city of Connersville and Fayette County were and are located within Zone 7, which zone is under the supervision and direction of zone servant, John C. Rainbow, of Cincinnati, Ohio. As such zone servant, he planned in advance for a large number of their members from states other than Indiana to go to Connersville and engage in their activities on Sunday morning, April 6. Pursuant to these plans, seventy-five (75) members from the states of West Virginia, Ohio and Kentucky met at Kingdom Hall, 110 East 8th Street in Cincinnati, Ohio, early that morning and were instructed by the zone servant and each was assigned certain specific territory in Connersville in which to carry on his or her activities, each receiving from him a cardboard upon which was traced a plat showing the streets in Connersville which were included in the territory to be covered by the member receiving such plat. After having been thus instructed and directed, the seventy-five (75) members, among whom was the zone servant, proceeded by automobile to Connersville, Indiana, a distance of approximately sixty (60) miles, arriving there about nine or nine-thirty o'clock that morning, and going immediately to the territory which had theretofore been assigned to them by their zone servant, beginning their activities by going from house to house explaining or attempting to explain their belief, and selling or attempting to sell the books or literature which they had brought with them for that purpose. In some instances, the husband remained in the automobile, sending his wife and small children to call upon the residents within his territory. This being Palm Sunday and at a time of the day when many citizens of Connersville were either attending church or were on their way to church, many complaints were made in person and by telephone by the citizens of that city to either the prosecuting attorney, sheriff, deputy sheriff, chief of police, or mayor. As a result of these complaints and believing that the criminal laws of the state were being violated, the defendant, Chrisman, acting in his official capacity as prosecuting attorney, prepared, or had prepared, affidavits charging each of the seventy-five (75) members with the violation of a criminal statute. Warrants were issued and the members were arrested and confined until released upon bond later that week. A grand jury was impaneled on April 9 and an indictment was returned charging these members with the violation of the criminal laws of Indiana. The indictment was afterwards dismissed as to many of the boys, girls and children, and the others were released on bond. No further action has been taken in that case.

On April 11, a supplemental complaint was filed in this case wherein, among other things, it is alleged that the defendants and other public officials of Connersville and Fayette County have threatened to continue to arrest the plaintiffs and other members of their group if they continue their activities in that community. The supplemental complaint brings to the court's attention, through allegations contained therein, the occurrences of April 6 and charges that the present sheriff, Joseph Oser, and the chief of police, William Traylor, have arrested and are threatening to arrest members of Jehovah's witnesses in violation of their constitutional rights, and asks that they each be made a party defendant. This request was afterwards withdrawn by the plaintiffs and no notice was ever served upon them, or either of them. However, on June 6, the plaintiffs filed a motion asking that Joseph Oser, the present sheriff, be substituted as a party defendant in lieu of defendant, Hunt, under Rule 25(d) of the Rules of Civil Procedure, and, under stipulation of the parties and by order of court, such substitution was made on June 12. It is also alleged in the supplemental complaint that the defendants and other officials in Fayette County have conspired to falsely charge

the plaintiffs and other members of their group with the violation of the following Indiana statute:

"Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony, within or without this state; or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty-five dollars ($25.00) nor more than five thousand dollars ($5,000.00), and imprisoned in the state prison not less than two (2) nor more than fourteen (14) years." Burns' Indiana Statutes, Annotated, 1933, Sec. 10-1101.

The indictment returned on April 9 was in three (3) counts, the first of which charged a violation of the Indiana statute prohibiting riots, Burns' Indiana Statutes, Annotated, 1933, § 10-1505; the second of which charged a violation of the statute last above set out, the felony alleged to have been the object of the conspiracy being the violation of the inciting of violence statute, Burns' Indiana Statutes, Annotated, 1933, § 10-1302; and the third of which charged the violation of the inciting of violence statute. On April 28, by an amendment to the supplemental complaint, a copy of this indictment is fully set forth. The plaintiffs, in their supplemental complaint, ask that an injunction be issued by this court, restraining the prosecution in the state court of the defendants named in this indictment "on account of the fact that jurisdiction is first attached in and to the United States District Court with respect to this controversy by and through the filing of the original complaint here, and that all proceedings in the state courts should be stayed until this controversy is decided by this court." The defendants filed answers to the complaint, the supplemental complaint and the amendment to the supplemental complaint, and the trial upon final hearing was begun on April 28 in this court and concluded on May 2.

■ Jurisdiction is based upon a statute of the United States which says that "The district courts shall have original jurisdiction as follows: * * * (14) * * * Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute * * * of any State,

of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States." 28 U.S.C.A. § 41.(14). It is the contention of plaintiffs that the state statutes attacked by them are unconstitutional and void, as construed and applied by defendants, and that, therefore, they are being deprived of their rights under the Constitution and laws of the United States by the enforcement of such statutes in the manner in which they allege such statutes are being enforced and threatened to be enforced by the defendants. It is their position, therefore, that this court has jurisdiction under the provisions of the statute, supra, and that it is not necessary to have diversity of citizenship (which is not present) nor is the jurisdictional amount necessary. With this position, we are in accord. Under the allegations of the complaint this court has jurisdiction.

The three (3) statutes of Indiana, the validity of which is challenged by plaintiffs, are as follows:

(1) "Any person who, in any manner, for exhibition or display, shall place or cause to be placed any words, or figures, or numbers, or marks, or inscriptions, or pictures, or design, or device, or symbol, or token, or notice, or drawing, or any advertisement of any nature whatever, upon any flag, standard, color or ensign of the United States, or shall expose, or cause to be exposed, to public view any such flag, standard, color, or ensign of the United States upon which shall be printed, painted, or otherwise placed, or to which shall be attached, appended, affixed, or annexed, any words or figures, or numbers or marks, or inscriptions, or pictures, or design, or device, or symbol, or token, or notice, or drawing, or any advertisement of any nature or kind whatever, or who shall expose to public view, or shall manufacture, or sell, or expose for sale, or have in possession for sale or for use, any article or thing or substance, being an article of merchandise or a receptacle of merchandise, upon which shall have been printed, painted or attached, or otherwise placed, a representation of any such flag, standard, color or ensign of the United States, to advertise, or call attention to, or to decorate, or to ornament, or to mark, or to distinguish the article or thing, on which shall be placed, or shall publicly mutilate, tram-

ple upon, or publicly deface, or defy, or defile, or cast contempt, either by words or act, upon any such flag, standard, color or ensign of the United States, shall be deemed guilty of a misdemeanor * * *." Burns' Indiana Statutes, Annotated, 1933, Sec. 10-506.

(2) "If three (3) or more persons shall unite for the purpose of doing any unlawful act in the nighttime or for the purpose of doing any unlawful act while wearing white caps, masks or being otherwise disguised, they shall be deemed guilty of a riotous conspiracy, and, on conviction, shall each be imprisoned in the state prison not less than two (2) years nor more than ten (10) years, and each be fined in any sum not exceeding two thousand dollars ($2,-000)." Burns' Indiana Statutes, Annotated, 1933, Sec. 10-1506.

(3) "It shall be unlawful for any person to advocate or incite, or to write, or, with intent to forward such purpose, to print, publish, sell or distribute any document, book, circular, paper, journal or other written or printed communication, in or by which there is advocated or incited the overthrow, by force or violence, or by physical injury to personal property, or by the general cessation of industry, of the government of the United States, of the state of Indiana, or all government." Burns' Indiana Statutes, Annotated, 1933, Sec. 10-1302.

▉▉ This court is asked by the plaintiffs to enter an order declaring said above described statutes invalid and void under the Fourteenth Amendment of the Federal Constitution, etc. It is not contended by plaintiffs that the defendants, Jackson, as Attorney General, Beamer, as his successor, Townsend, as Governor, or Schricker, as his successor and as present Governor, took any part in or had any knowledge of the things of which they complain in their complaint, in their supplemental complaint, or in the amendment thereto. They are made defendants simply because of their official positions and because the validity of state statutes is challenged. Such defendants are not now threatening to enforce said statutes as against the plaintiffs, nor have they, at any time in the past, so threatened. It is the duty of the Attorney General to appear in the Supreme Court and represent the state in all criminal cases appealed to that court. He is performing that duty in the case of Trent and McKee, but that is the only action upon his part

which, in any manner, affects the plaintiffs or any other members of their group. The enforcement of such statutes is a part of the duties of the local officials. Of the local officials who were such at the time of the filing of the complaint the term of the then defendant, Hunt, as sheriff, has expired, and the term of the defendant, Johnston, as circuit judge, has expired. Neither of these two parties holds any official position at this time, and neither of them has held any official position in Fayette County since December 31 last. Since the evidence shows that all their acts were done in an official capacity in good faith in the performance of their official duties and that neither did anything in his individual capacity, either singly or in concert with others, in an attempt to deprive these plaintiffs of their rights under the Constitution and laws of the United States, and that they, nor either of them, ever have threatened, nor are they or either of them now threatening, to do anything that will so deprive them, there is no occasion to issue an injunction against them.

▉ The defendants, Himelick, Nelson, Carter, Cates, Curry and Steele, are private citizens of Connersville, neither of them having held any official position during the time in question, with the possible exception of Cates, who was named a deputy sheriff at one time but who never qualified or acted as such. All of the acts done by them were done as individuals and not as officials. The defendant, Himelick, is a lawyer, and assisted the prosecuting attorney in the prosecution of the plaintiffs, Trent and McKee, under the Riotous Conspiracy charge, but he was under private employment and was not acting as a deputy or special prosecuting attorney in the trial of that case. He did only the things that were required of him as an attorney to properly represent his client. Neither the defendant, Himelick, nor any of the other private citizen defendants in this action conspired together or with any other person or persons to prosecute these plaintiffs or any other member or members of their group or to deprive them of their rights under the Constitution or laws of the United States. Neither of them has threatened, nor are they at this time threatening, to prosecute the plaintiffs or any other members of their group. The hearing fails to disclose any evidence which would warrant or justify the issuance of an injunction against them, or either of them. Neither of them took any part in the occurrence

on April 6, nor did they, or either of them, counsel or confer with any other person or official who participated in the arrest and indictment of the seventy-five (75) members who were arrested on that date.

The remaining defendants, Oser, Adams and Chrisman, were public officials on April 6, 1941, being sheriff, deputy sheriff and prosecuting attorney, respectively, of Fayette County at that time. However, on or about May 20, 1941, the defendant, Adams, resigned as deputy sheriff, and, since that date has not held, and does not at this time hold any official position in Fayette County or in Indiana. The evidence discloses that the defendant, Oser, was not a public official at the time of the trial of Trent and McKee and that he did nothing as an individual in the prosecution of that case. The evidence further discloses that the defendants, Adams and Chrisman, did nothing in the prosecution of that case except what they were required to do in their official capacity. If they erred in the performance of those duties the evidence fails to show that such errors were the result of a conspiracy on their part to deprive these plaintiffs or any other member or members of their group of their rights under the Constitution and laws of the United States. Any errors that they may have committed in the prosecution of that case are subject to review by the Supreme Court of Indiana in the appeal now pending in that court. They, together with the now defendant, Sheriff Oser, and some of the police officers of Connersville, did assist in the arrest of the seventy-five (75) members on April 6 in that the defendant, Chrisman, as prosecuting attorney, prepared or had prepared the affidavits and caused the warrants for their arrest to be issued, and the defendants, Oser and Adams, as sheriff and deputy sheriff, respectively, assisted in the arrest of such members. In thus doing, each acted in his official capacity in good faith and in the honest belief that such action upon his part was justified under the circumstances and was necessary to preserve order in the community and to prevent another outburst of violence. Whether they exercised good judgment in the discharge of their official duties is beside the point. It is sufficient to say that, in their honest opinion, they did what they believed to be necessary in the discharge of their official duties and in accord with their oaths as such officials. They were charged with a duty of protecting the citizens of Connersville and Fayette County in their

rights to worship God as they saw fit, to attend the church of their choice unmolested, and to the peaceful enjoyment of their homes undisturbed, as well as to protect the rights of the seventy-five (75) members who came from foreign states on Sunday morning and sought to engage in their activities when many local citizens did not care to be disturbed by such persons, preferring rather to be left to their own religious belief and not be disturbed in the privacy of their homes. Each class of individuals was entitled to the protection of the officials in their rights. Neither class was entitled to more, and these three officials were attempting honestly to see that such rights were preserved to each. Neither the defendant, Chrisman, nor the defendant, Oser, nor the defendant, Adams, did more than he believed to be necessary in the preservation of peace and order, honestly believing that the laws of the state were being violated. Neither has threatened nor is now threatening to unjustly prosecute the plaintiffs or any other member of their group, or to do anything that will deprive them of their rights under the Constitution and laws of the United States. The remaining officials are ready and willing to do their duty as law-enforcing officials in the enforcement of the laws, regardless of whom it may affect.

No disturbance of any kind had occurred in Connersville or Fayette County since the trial of Trent and McKee in September, 1940, until April 6 of this year. This court found that equity did not require the issuance of a temporary injunction and, while the evidence on final hearing was much more extensive than that on the hearing on application for a temporary injunction, yet, no evidence was adduced upon final hearing which would justify the issuance of an injunction unless it was that which had to do with the occurrence of April 6. It will be recalled that each of the seventy-five (75) members arrested on that date and afterwards indicted by the grand jury of Fayette County was a resident of a state other than Indiana; that they met in Cincinnati, Ohio, a distance of approximately sixty (60) miles from Connersville, in accordance with a plan pre-arranged by zone servant, Rainbow, traveled to that city and began their activities in parts of the city which had theretofore been assigned to them by their zone servant. It may be significant that Sunday, especially Palm Sunday, was selected to again begin their activities in that

community, after not having been active therein for many months. It is well known that that particular Sunday is more sacred to many people than any other Sunday, with the possible exception of Easter Sunday. It may also be significant that Connersville was chosen in preference to other places much closer to their meeting place. Significance may also attach to the fact that a temporary injunction in this case had been denied, that no disturbance had occurred subsequent thereto, and that a pre-trial conference had been called for the purpose of discussing the issues, the stipulation of facts, and the date for final hearing. The date of the pre-trial conference had been fixed for April 11, and the parties notified shortly before April 6.

It must be kept in mind that the activities of this group on April 6 were planned, supervised and directed by the plaintiff, Rainbow, the zone servant; that he had attended the trial of Trent and McKee and knew of the feeling of the citizens of Connersville as to the continued activities of Jehovah's witnesses in that city; that he knew of the previous disturbances in that city occasioned by their activities; that he knew of the pendency of this action and of the refusal of this court to issue a temporary injunction; that he, and many of the group that accompanied him to Connersville on that date, knew that this case was to be scheduled for final hearing within a short time. The conclusion is inescapable that he, and many others who accompanied him on that trip, knew, or had reason to believe, that trouble would be encountered by them, especially going in such large numbers, and on Palm Sunday.

■■ Under the circumstances, should this court, sitting as a court of equity, interfere with the state and county officials in the enforcement of the criminal laws of the state, and in the discharge of their duties as they see them? We think not.

In the case of Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 493, 70 L.Ed. 927, the Supreme Court said:

"Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764, and following cases have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of ir-

reparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise, if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court. Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402."

In the case of Watch Tower Bible & Tract Society, Inc. v. City of Bristol, D.C., 24 F.Supp. 57, 59, affirmed without opinion in 305 U.S. 572, 59 S.Ct. 246, 83 L.Ed. 361, the facts were somewhat similar to those in the instant case. In that case, the court said:

"However, equity will ordinarily not interfere to prevent the enforcement of a criminal action even though unconstitutional. To justify interference there must be circumstances presented showing clearly that an injunction is necessary in order to afford adequate protection. * * * In the instant case, if the statute is misapplied or in conflict with the Federal Constitution, these questions can be raised in the criminal prosecution trial where there is ample opportunity for a review of the federal questions presented. * * * If a federal question is presented, they may appeal to the Supreme Court of the United States. The only injury that can be found from this bill of complaint is that the complainants will not be free to go about the countryside pursuing their work of preaching their doctrine and distributing their literature. There is no irreparable damage which warrants equitable relief. * * *

"The contention that an equity court has jurisdiction because the statute is null and void as abridging the freedom of speech, the press and religion or an unreasonable exercise of police power, are not supported by bill or affidavits. The general police powers are reserved to the states and the power to protect life and public safety, to preserve good order and the public morals, and to protect the property of its citi-

zens, is within the limits of the states' dominion by any legislation appropriate to that end and which does not encroach upon the rights guaranteed by the Constitution. * * *

"Retention by the states of the police power necessary for their internal government has long been recognized. * * * In Whitney v. California, supra [274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095], the court pointed out that the 'equal protection clause does not take from a State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary; and that one who assails the classification must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.'"

In the more recent case of Beal, County Attorney, et al. v. Missouri Pacific Railroad Corporation, 312 U.S. 45, 61 S.Ct. 418, 420, 85 L.Ed. ——, that the court approved and followed the principle announced in the case of Fenner v. Boykin, supra, and said further:

"No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. * * *

"This is especially the case where the only threatened action is the prosecution in the state courts by state officers of an alleged violation of state law, with the resulting final and authoritative determination of the disputed question whether the act complained of is lawful or unlawful. * * * The federal courts are without jurisdiction to try alleged criminal violations of state statutes. The state courts are the final arbiters of their meaning and appropriate application, subject only to review by this Court if such construction or application is appropriately challenged on constitutional grounds. Hygrade Provision Co. v. Sherman, supra [266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402]; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927."

See, also, Railroad Commission of Texas, Lon A. Smith, Ernest O. Thompson, et al. v. Pullman Company et al., 61 S.Ct. 643, 85 L.Ed. ——, decided March 3, 1941.

The question of the validity of the statutes attacked is presented to the Supreme Court of Indiana in the case appealed to that court by the plaintiffs, Trent and McKee. If those statutes were misconstrued and misapplied, or are in conflict with the Constitution or laws of the United States, those questions can be presented to that court in that case where there is ample opportunity for a review of all questions, including the federal questions presented, and, if an adverse ruling is had, then the Judicial Code provides an opportunity for ultimate review by the Supreme Court of the United States.

In considering the question of whether a federal court should issue an injunction against the enforcement of state criminal statutes, the Supreme Court, speaking through Mr. Justice Black, in the case of Watson et al. v. Buck et al., 61 S.Ct. 962, 966, 85 L.Ed. ——, decided on May 26, 1941, said:

"Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. 'No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid.' Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L.Ed. ——. A general statement that an officer stands ready to perform his duty falls far short of such a threat as would warrant the intervention of equity. * * * For such a general statement is not the equivalent of a threat that prosecutions are to be begun so immediately, in such numbers, and in such manner as to indicate the virtual certainty of that extraordinary injury which alone justifies equitable suspension of proceedings in criminal courts. The imminence and immediacy of proposed enforcement, the nature of the threats actually made, and the exceptional and irreparable injury which complainants would sustain if those threats were carried out are among the vital allegations which must be shown to exist before restraint of criminal proceedings is justified. * * * 'The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even

though unconstitutional. * * * To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights. * * * We have said that it must appear that "the danger of irreparable loss is both great and immediate"; otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged. There is ample opportunity for ultimate review by this Court of federal questions.' Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 96, 55 S.Ct. 678, 680, 681, 79 L.Ed. 1322."

Such "exceptional circumstances" and "great and immediate" danger of irreparable loss are not here shown. It is clear that there are no exceptional circumstances in this case where the danger of irreparable loss or damage to the plaintiffs is great and immediate. It is equally clear that the equities are with the defendants. The complaint should be dismissed for want of equity, and judgment will be entered accordingly.