# LINDQUIST v. DILKES.
## No. 7788.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 18, 1941.

Decided March 12, 1942.

Robert G. Kelly, of Philadelphia, Pa. (Conlen, LaBrum & Beechwood, and James S. Benn, Jr., all of Philadelphia, Pa., on the brief), for appellant.

Milton M. Borowsky, of Philadelphia, Pa. (Freedman & Goldstein, of Philadelphia, Pa., on the brief), for appellee.

Before CLARK and JONES, Circuit Judges, and GIBSON, District Judge.

CLARK, Circuit Judge.

The learned District Judge's introductory statement of facts cannot be improved upon. We therefore quote from his opinion.

"Frank O. Lindquist, an able seaman 57 years of age, joined the crew of the barge 'Exeter' on April 15, 1939 without a physical examination. At that time, and since about 1920, he had been suffering from a urinary ailment. The symptoms of which consisted of frequency of desire accompanied by soreness upon urination, although it apparently did not interfere with his employment. On that day the barge left Philadelphia en route to Boston, but, due to unfavorable weather conditions, it did not reach its destination until May 1, 1939. During the voyage the libellant's condition became progressively worse, and upon arrival at Boston he was unable to aid in the docking of the vessel. His illness and distress had become so acute from the reten-

tion of urine that the master of the barge caused him to be removed in an ambulance to the U. S. Marine Hospital at Chelsea, Massachusetts. There the libellant's condition was diagnosed as hypertrophy of the prostate, benign, accompanied by bladder pains, frequency of urination and acute retention. He remained in the hospital where a cystoscopic examination was made on May 11 followed on May 18 by a super pubic prostatectomy for the removal of the prostate gland. Libellant was discharged from the hospital on July 22, 1939, at which time the record noted that the patient was ambulant, urinated normally and should be able to return to work one month from the discharge date." Appendix to Appellant's brief filed May 8, 1941, pp. 22, 23.

The prophecy of the record hereinabove referred to seems to have been over-optimistic. Plaintiff reapplied for his old job on August 21, 1939 but was unable to work at it. At irregular intervals he continued to receive post-operative treatments at various clinics and hospitals. He was still undergoing out-patient hospitalization at the time of the trial.

Plaintiff claimed for negligence under the Jones Act[1] and recovery under the doctrine of maintenance and cure for seamen.[2] No jury was demanded and the case was heard by the District Judge. At the conclusion of the plaintiff's case, the defendant moved to dismiss the cause of action under the Jones Act. The plaintiff agreed to withdraw that claim and the same was deemed withdrawn by mutual consent. The trial proceeded on the remaining claim for maintenance and cure. The District Court found that the plaintiff was entitled to maintenance at the rate of $13.00 weekly for the seventy weeks which have elapsed from the date of plaintiff's discharge from the hospital. Defendant appeals on grounds that no maintenance should have been granted and that even if permitted it should have been limited to the period of total disability. Finally, the appellant argues the judgment is void because it was obtained in a court that was without jurisdiction.

Plaintiff was not asked about his physical condition at the time he was signed on by the barge captain. He knew, of course, that he was suffering from a urinary ailment. As the learned District Judge puts it:

" * * * The symptoms, although of long standing, caused him some distress at the times when he relieved his bladder but there was nothing to indicate to him that this was an inherently serious or unusual condition to men of his age. The fact that libellant had worked continuously up to the time of hospitalization also seems to negative any idea that an actual disability existed when he was employed or that he knowingly concealed an incipient serious malady." Appendix to Appellant's brief filed May 8, 1941, p. 24.

He does not seem to have known fully its implications. Many men of his age do not.[3] The court below treats the matter thus:

"We believe, however, that the condition as it then existed was not of sufficient seriousness as to create in the mind of the libellant any doubt as to his ability to perform the services which would ordinarily be required of him." Appendix to Appellant's brief filed May 8, 1941, p. 24.

Thus a very interesting question is raised. Further, it is one that does not appear to have been met squarely in the cases. This Court has given considerable thought to the scope of the right and duty of the maintenance and care (cure) of seamen.[4] The writer rather differed with his learned brethren on the exact extent of the doctrine. He inclined to the feeling that it should not be given an interpretation wide enough to affect its ratio decidendi unfavorably.

By that standard how should we answer the question of the principal case? The obligation is not at peril. Shipowner's liability does not follow seaman's illness or injury. If these latter occur after the commencement of the voyage and are in some measure the result of the sailor's own deliberate acts, he suffers the consequences. We used the qualified "in some measure" because the cases exhibit a certain looseness of expression. Some of them stress

---

[1] 46 U.S.C.A. § 688.

[2] See authorities cited in Loverich v. Warner Co., 3 Cir., 118 F.2d 690, and its dissent.

[3] The average duration of symptoms before relief is sought is six to seven years.

12 Cyclopedia of Medicine, Surgery and Specialties (1941) 541.

[4] Calmar Steamship Corp. v. Taylor, 3 Cir., 92 F.2d 84, reversed 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Loverich v. Warner Co., 3 Cir., 118 F.2d 690.

morals rather than economics and judge the act by their view of its viciousness.[5] Others adopt the descriptive phrase of the cognate Compensation Acts[6] and speak of wilful misconduct.[7] Still others[8] talk of fault in a manner which comes close to a clearly unsound theory of contributory negligence.[9]

When the physical condition precedes the maritime employment, the courts do not seem interested in its origin. For this there appears to be no logical reason. They have, however, concerned themselves with another problem. Three rules are possible. The seaman can be said to warrant his own fitness. Some cases use such language.[10] The shipowner can be compelled to take his "hands" as is. This is the court's interpretation of the Longshoreman's Act.[11] Or as a sort of middle ground, the seaman's mens rea can be the test. If, for instance, he has lied to his prospective captain, he should be and is left to his own devices.[12] The cases so holding rather speak interchangeably and confusingly, as we think, of fraud and concealment.[13] We suggest that a proper clarification can be borrowed from an analogous branch of the law. The life and health insurance contracts have been held uberrima fides,[14] more so perhaps in England than here.[15] This because the rela-

---

[5] Chandler v. The Annie Buckman, 5 Fed.Cas. page 449, No. 2,591a; Pierce v. Patton, 19 Fed.Cas. page 636, No. 11,145; The Alector, D.C., 263 F. 1007; Lortie v. American-Hawaiian S. S. Co., 9 Cir., 78 F.2d 819; Rawding v. Hooten, 1 Cir., 88 F.2d 125; Trimm v. United Fruit Co., D.C., 41 F.Supp. 395. One wonders what effect would be given to exposure in a house whose inmates are suffering from scarlet fever.

[6] Serious and wilful misconduct of employees as a bar to compensation, 4 A.L.R. 116; 71 C.J. Workmen's Compensation §§ 478–485; Serious and Wilful Misconduct Clauses of California Workmen's Compensation Act, 22 California Law Review 432; Workmen's Compensation—Wilful Misconduct as Bar to Recovery, 14 Tennessee Law Review 369; Workmen's Compensation: Wilful Misconduct, 10 Michigan State Bar Journal 121.

[7] Smith v. Lykes Brothers-Ripley S. S. Co., 5 Cir., 105 F.2d 604.

[8] Mowatt v. Brown, 17 Fed.Cas. page 929, No. 9,889a; The Mary Sanford, D. C., 58 F. 926; Peterson v. United States, D.C., 27 F.2d 182; The Sarmatia, 1927 A.M.C. 925.

[9] Compare the French law: "Inspire en cela de la loi du 9 avril 1898 sur les accidents du travail terrestre, le Code du travail maritime (art. 86), refuse le droit prolonge aux soins quand la blessure ou la maladie a ete determinee par un fait intentionnel ou une faute inexcusable du marin. Encore est-il pourtant qu'en pareil cas le capitaine doit faire donner tous les soins necessaires au marin jusqu'a ce que celui-ci soit confie a une autorite francaise ou, s'il n'en existe pas au lieu de debarquement, jusqu'a ce que le traitement et le rapatriement de l'interesse soient assures." Original: Danjon, Manuel de Droit Maritime, Titre 2, Chapitre Premier, Gens de Mer, sec-

tion V, Obligations de L'Armateur, subsection 3, Traitement Medical Des Gens D'Equipage, p. 103.

Inspired by the law of the ninth of April, 1898, concerning accidents occurring during land transportation the Code of Ocean Transportation (Art. 6) refuses an extensive right of care when the injury or illness has been determined by an intentional act or an inexcusable fault of the sailor. In such a case the captain must give the necessary care to the sailor only until he has been turned over to a French authority or if none exists at the place of debarkation, until the treatment and repatriation of the subject has been assured.

Translation.

See also Lacour, Precis de Droit Maritime, Chapitre 2, Des Travailleurs Martimes, section 157, Obligations de l'armateur en cas de maladie ou de blessure du marin, p. 81.

[10] The Mary Sanford, D.C., 58 F. 926; Peterson v. United States, D.C., 27 F.2d 182.

[11] 33 U.S.C.A. § 901 et seq.; cf. Grain Handling Co. v. Sweeney, 2 Cir., 102 F. 2d 464, affirming D.C., 23 F.Supp. 748, certiorari denied Grain Handling Co. v. McManigal, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478; Southern Shipping Co. v. Lawson, D.C., 5 F.Supp. 321; Trudenich v. Marshall, D.C., 34 F.Supp. 486; Wood Preserving Corp. v. McManigal, D.C., 39 F.Supp. 177.

[12] Neilson v. The Lauria, 17 Fed.Cas. page 1305, No. 10,092; Writer v. The Richmond, 30 Fed.Cas. page 718, No. 18,-104.

[13] The Sarmatia, 1927 A.M.C. 925; Neilson v. The Lauria, 17 Fed.Cas. page 1305, No. 10,092.

[14] The cases are collected in 3 Couch, Cyclopedia of Insurance Law § 776.

[15] Carter v. Boehm, 3 Burr. 1905, 97 Eng. Reprint 1162. Cf. 3 Couch, Cyclo-

tionship imposes a duty to disclose.[16] We think the relationship with his master of as favored a servant as a seaman is closer than that of the insured and the insurance company. Both the shipowner and the insurer assume an obligation whose burden may depend upon the physical condition of the assured and the seaman. The company gets a cash consideration; the shipowner only a contented mariner.

If this analogy is sound, the sailor's duty is to disclose whatever he as an ordinarily prudent person should have known is material to the risk. It might be argued that the withholding of any medical fact either known or reasonably to be known is fatal. This on the theory that its significance is left to the judgment of the insurance company or the employer. The cases in our parallel field of the law do not go so far. We think correctly because after all the employer or the insurer can quite easily ascertain the necessary information by proper inquiry. The risk is, of course, that the seaman may be unable through illness to continue his work. In our insurance comparison the question of materiality of matter concealed is one of fact.[17] So a cold would not be material to the risk in life or health insurance;[18] whereas there can be no doubt as to the materiality of the existence of syphilis.[19] Although the learned District Judge seems to have been talking both subjectively and in terms of fraud we happen to agree with his conclusion. We think

that the average layman would not attach disabling significance to prostate enlargement. Even if we did not agree we suppose we should be bound by the ruling of the Court below. As we shall see later, the action is at law and not in admiralty. Since a jury was waived we must accept the court's findings of fact "unless clearly erroneous."[20]

Defendant contends that plaintiff was able to return to work a month after his discharge from the hospital following the prostatectomy. Maintenance should therefore be limited, it is claimed, to this period of disability. There is ample evidence, however, that plaintiff required post-operative treatment up to the time of trial. He received treatment in Philadelphia at the U. S. Public Health Service on August 3, 1939, and August 9, 1939. Further treatments were sought at the clinic of the Pennsylvania Hospital from October 3, 1939, to May 14, 1940, after which plaintiff sought relief at the Lankenau and Methodist Hospitals. From August 7, 1940 to the date of trial, plaintiff was under the care of the Osteopathic Hospital. It is clear that regardless of whether plaintiff was totally disabled or not, he required periodic post-operative out-patient treatments. Maintenance and cure must be continued during this period when the seaman is unable to return to work.[21]

Although the learned District Judge began his opinion with the assertion that the action was one in admiralty, the-

---

pedia of Insurance Law § 793 (Marine Risks).

[16] Cf. Discussion of that duty in 3 Torts, American Law Institute, § 550, Liability For Fraudulent Concealment, § 551 Liability For Nondisclosure; and also, Pollack, Law of Torts, Positive Duty to Give Full and Correct Information, p. 307.

[17] 3 Couch, Cyclopedia of Insurance Law § 784; 29 Am.Juris.Insurance § 1534.

[18] Metropolitan L. Ins. Co. v. McTague, 49 N.J.L. 587, 9 A. 766, 60 Am.Rep. 661; Mutual L. Ins. Co. v. Hurni Packing Co., 8 Cir., 260 F. 641, certiorari denied 251 U.S. 556, 40 S.Ct. 178, 64 L.Ed. 412; Sieverts v. National Benev. Asso., 95 Iowa 710, 64 N.W. 671.

[19] Penn Mut. L. Ins. Co. v. Hartle, 165 Md. 120, 166 A. 614, 91 A.L.R. 1466; Quinn v. Mutual L. Ins. Co. of New York, 91 Wash. 543, 158 P. 82.

[20] Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c.

[21] "The shipowner's duty to give 'cure' to an injured seaman is only a duty to give proper care for a reasonable time during which medical treatment may be expected to effect a cure. The Bouker No. 2, [2 Cir.], 241 F. 831, * * * recovery was limited to the time of the seaman's discharge from the hospital, though his complete recovery was not effected until some time thereafter. But that decision does not say that the duty may never extend beyond such discharge. If the discharge is only partial, as where out-patient treatment continues to be given, or if the discharge, though complete, is premature, the shipowner's duty should continue to the end of a reasonable period. * * * The shipowner's duty to furnish maintenance is coextensive in time with his duty to furnish care." Skolar v. Lehigh Valley R. Co., 2 Cir., 60 F.2d 893, 895.

"When the man is put on out-patient status the duty to maintain continues; ordinarily until the man is certified by-

proceeding was actually heard as a common law action without a jury. This, the appellant argues, was jurisdictional error because no diversity of citizenship was alleged or proved. The action for cure and maintenance is usually brought in admiralty.[22] The common law side of the federal court can also entertain a suit for maintenance and cure if the jurisdictional minimum amount of $3,000 is shown and diversity of citizenship exists.[23] The present proceeding, however, was not a separate action at common law for cure and maintenance. It was joined with a claim for indemnity under the Jones Act. This Act specifically confers jurisdiction upon the common law side of the federal district court in hearing actions, brought under its provisions.[24] In accordance with Civil Procedure Rule 18, a claim for maintenance and cure may be joined with a tort suit under the Jones Act.[25] The court therefore possessed jurisdiction at the outset of the proceeding. When the claim under the Jones Act was withdrawn,[26] the court might have transferred the action to the admiralty docket. If this procedure had

been adopted, our duties on appeal would be slightly different.[27] But the court was under no obligation to do so. The action was properly before the District Court under the Jones Act.[28] When the District Court acquires jurisdiction through a complaint presenting a substantial federal question, it has power to decide every question in the case.[29] Jurisdiction is not lost because later, on the merits, the court decides that the federal claim fails.[30] Appellant's argument has been answered by the Supreme Court in the case of Hurn v. Oursler.[31] It was there held that where two grounds for a cause of action are joined and the federal court has jurisdiction over one, the other should also be resolved, regardless of the disposition of the claim on which jurisdiction is based.[32] Here also there were two grounds of recovery based on a single set of facts. The distinction in liability between the two theories rested on the necessity under the Jones Act of proving that the employer's negligence caused the seaman's injury.

The judgment of the District Court is affirmed.

the U. S. Public Health service as fit for duty." Robinson on Admiralty, p. 295, footnote 71.

[22] Smith, Liability in the Admiralty For Injuries to Seamen, 19 Harvard Law Review 418; Admiralty-Liability of Owner for Maintenance and Cure When Seaman Develops Incurable Disease in Service, 24 Virginia Law Review 920; Robinson, The Seaman in American Admiralty Law, 16 Boston University Law Review 283.

[23] 4 Benedict on Admiralty, 4th Ed., p. 201; cf. Thornes v. Socony Vacuum Oil Co., D.C., 37 F.Supp. 616.

[24] "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury * * *." 46 U.S.C.A. § 688.

[25] See Stevens v. R. O'Brien & Co., 1 Cir., 62 F.2d 632; Smith v. Lykes Brothers-Ripley S. S. Co., 5 Cir., 105 F.2d 604; Robinson, Admiralty § 43.

[26] Probably because it was doubtful whether plaintiff has proved negligence on the part of the employer. Brittingham v. Ore S. S. Corp., 4 Cir., 62 F.2d 616; Cruse v. Sabine Trans. Co., 5 Cir., 88 F.2d 298.

[27] In admiralty the parties obtain a trial de novo on appeal. Brooklyn Eastern

Dist. Terminal v. United States, 287 U. S. 170, 53 S.Ct. 103, 77 L.Ed. 240.

[28] No assertion has been made that the claim under the Jones Act was colorable.

[29] Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Davis v. Wallace, 257 U.S. 478, 42 S.Ct. 164, 66 L.Ed. 325; Bunn, Jurisdiction and Practice of the Court of the United States (1939) 38.

[30] Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

[31] 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148; cf. Skolar v. Lehigh Valley R. Co., 2 Cir., 60 F.2d 893, and Id., 1933 A.M.C. 548.

[32] See Scope of Original Federal Jurisdiction Based on a Federal Question: Addendum on Hurn v. Oursler, 33 Columbia Law Review 699; Rosenberg, Jurisdiction of the Federal Courts in Multiple Question Cases, 1 University of Chicago Law Review 480; Davidson, The Jurisdiction of the Federal Courts Over Local Questions When the Federal Claim is Not Based Upon or is Held Invalid, 27 Illinois Law Review 816; Courts—Federal Jurisdiction—Effect in Case Properly Brought of Subsequent Change Eliminating Basis of Federal Jurisdiction, 41 Columbia Law Review 738.