## SKOLAR v. LEHIGH VALLEY R. CO.
### No. 324.

Circuit Court of Appeals, Second Circuit.
July 26, 1932.

Lucien V. Axtell, of New York City (Charles A. Ellis, of New York City, of counsel), for appellant.

Alexander & Green, of New York City (H. S. Ogden, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff was a fireman employed by the defendant on its tug Auburn at the time he sustained injury. His complaint alleges that on November 6, 1928, while he was standing upon the starboard firing platform in the fireroom, engaged in the performance of his duties, the tugboat lurched, throwing him to the floor and causing him to sustain a broken leg. The Auburn was constructed with four fire boxes, all of which were fired by the plaintiff, the two lower boxes from the floor of the fireroom and the two upper from raised iron platforms. The starboard platform, from which the plaintiff fell, was raised 44 inches above the floor; it was 4 feet wide, 9 feet long, and was made of smooth iron plates set side by side latitudinally. The failure to provide the platform with any guard rail was charged both as constituting negligence in that an unsafe place for work was furnished, and as rendering the vessel unseaworthy. The bill of particulars also specified negligence in operating the tugboat so that it struck some object which caused the lurch that threw plaintiff from the platform, but this charge need not be further considered, as no evi-

dence was offered in support of it. There was no witness to the accident other than the plaintiff himself. He testified that when the tug listed slightly he slipped for some unknown cause and fell from the platform. The listing was no more than was usual and to be expected in harbor operations. Unless it was negligent to require him to work on such a platform, no negligence was shown. The defendant's answer, in addition to a general denial of negligence, set up the defense of assumption of risk. From the plaintiff's testimony it appears that he was an "extra" fireman, working first on one and then on another of defendant's boats at an hourly wage; that he had fired on the Auburn on at least fifty prior occasions and knew the conditions under which he was required to work and of which he now complains. He had also fired on two other tugs similarly constructed which the defendant owned. On the occasion in question, he went on board the Auburn at 11 p. m., while she was moored at a dock on the New Jersey side; the accident occurred about two and a half hours later as she was crossing the harbor bound for East River with three barges in tow. The plaintiff was immediately taken to a hospital, where he remained for sixteen days. He then went to his home, and thereafter did not consult any doctor, although he continued on crutches for five months. It was stipulated that the defendant paid his wages, and paid in full his hospital, medical, and maintenance charges during his period in the hospital. At the close of the plaintiff's case, the complaint was dismissed.

■ At the outset the plaintiff's attorney voluntarily stated that he was proceeding as to the first cause of action under the Jones Act, § 33, 46 USCA § 688. Thereupon the court struck out the allegations of the complaint relating to unseaworthiness, on the ground that plaintiff was required to elect between rights under the statute and those under the former maritime law. This ruling is challenged. The statute provides that a seaman who sustains personal injuries in the course of his employment "may, at his election, maintain an action for damages at law, with the right of trial by jury." As was pointed out in Pacific S. S. Co. v. Peterson, 278 U. S. 130, 138, 49 S. Ct. 75, 77, 73 L. Ed. 220: "The right to recover compensatory damages under the new rule for injuries caused by negligence is, however, an alternative of the right to recover indemnity under the old rules on the ground that the injuries were occasioned by unseaworthiness; and it

is between these two inconsistent remedies for an injury, both grounded on tort, that we think an election is to be made under the maritime law as modified by the statute."

The appellant, however, urges that this does not say when the election must be made, and argues that he should be allowed to present both bases of recovery to the jury, and be held to have made an election only after his suit has been prosecuted to a judgment granting or denying a recovery. If he may present both bases for recovery in the same suit, we are unable to see wherein the statutory right is an alternative to the right to indemnity existing under the old maritime rules, or wherein he has been required to elect between the "two inconsistent remedies." The language of the opinion in Engel v. Davenport, 271 U. S. 33, 36, 46 S. Ct. 410, 70 L. Ed. 813, as well as the passage above quoted from the Peterson Case, is inconsistent with the plaintiff's contention. But, in any event, it does not appear that the ruling was prejudicial, for the lack of a guard rail which was alleged to show unseaworthiness was the identical fact relied upon as constituting negligence.

■ It is urged that the absence of a guard rail for a platform of the admitted dimensions and height above the fireroom floor presented a jury question as to negligence. The appellee makes answer to this claimed defect that a low rail would not obviate, but rather increase, the danger, while a high rail would prevent the fireman from swinging his shovel. But regardless of whether the court below was right in holding that there was no evidence of negligence, we think that assumption of risk was a complete defense to the first cause of action. The appellant concedes that this would be so were he a shore worker or a stevedore, but argues that a different rule applies to seamen. Where a seaman is ordered to use a patently defective appliance or to perform an obviously dangerous act on shipboard, he is not held to have assumed the risk because his duty to obey orders overrides the consent ordinarily implied from knowledge of the danger. See discussion in Holm v. Cities Service Transportation Co., 60 F.(2d) 721, decided by this court July 18, 1932. The case at bar does not fall within the reason of the rule. Here the plaintiff was an "extra" fireman, employed at an hourly wage with a usual tour of eight hours a day on different tugs of the defendant. He was not supplied with a defective appliance nor ordered to perform a dangerous duty which fell to his lot rather than some other

member of the crew because of a superior officer's selection. The danger arose from the mechanical design and construction of the fireroom. With this he was perfectly familiar and voluntarily took employment under these conditions time after time on at least fifty prior occasions. He did not live on board, but at his home in Jersey City; nor had he signed on for any definite voyage of this harbor tug, nor been employed to work upon her rather than upon some other of the defendant's vessels. Had he refused to go aboard on the evening of November 5, when he sought the Auburn out at the dock, it seems extremely doubtful whether he would have been subject to the disciplinary penalties of an ordinary seaman. Under such circumstances the analogy of a stevedore is more persuasive than that of a seaman in determining whether the doctrine of assumption of risk should be held applicable. See The Maharajah, 40 F. 784, 785 (D. C. S. D. N. Y.); Cunard S. S. Co. v. Smith, 255 F. 846 (C. C. A. 2); Yaconi v. Brady & Gioe, Inc., 246 N. Y. 300, 306, 158 N. E. 876. The facts being undisputed, there was no issue for the jury as to assumption of risk.

The appellee does not question that the appellant was entitled to cure and maintenance. We assume that he was. Recovery was denied on this cause of action because the District Court thought this implied contractual duty had been performed. It was stipulated that cure and maintenance were supplied until he was discharged from the Jersey City Hospital to which the defendant had had him taken. It is true that he was not then able to work. He testified that he was on crutches for five months after leaving the hospital and was unable to work for thirteen months. During this time he was living at home, and claims that his maintenance cost him eighteen or twenty dollars per week. But the shipowner's duty to give "cure" to an injured seaman is only a duty to give proper care for a reasonable time during which medical treatment may be expected to effect a cure. The Bouker No. 2, 241 F. 831 (C. C. A. 2); The Mars, 149 F. 729 (C. C. A. 3); The Pochasset, 295 F. 6 (C. C. A. 1). In The Bouker No. 2, supra, recovery was limited to the time of the seaman's discharge from the hospital, though his complete recovery was not effected until some time thereafter. But that decision does not say that the duty may never extend beyond such discharge. If the discharge is only partial, as where outpatient treatment continues to be given, or if the discharge, though complete, is premature, the shipowner's duty should continue to the end of a reasonable period. See The Ipswich, 46 F.(2d) 136, 139 (D. C., Md.). In the case at bar the record is very inadequate to disclose the appellant's condition when he left the hospital. It is true that he testified that he did not thereafter go to a doctor, but he also testified that his leg was in a cast for eight weeks. A physician who examined him shortly before the trial testified that, with such a fracture as X-ray photographs disclosed, medical treatment would still be needed after the patient had had sixteen days in the hospital and that the cast would probably still be on his leg. If the cast was not removed before he left the hospital, it is clear that the defendant's duty to provide medical treatment continued at least until it was removed. The shipowner's duty to furnish maintenance is coextensive in time with his duty to furnish care. With the record in this condition, we think it does not so clearly appear that the defendant had fully performed its obligation in respect to cure and maintenance as to justify dismissing the second cause of action.

We find no error in dismissal of the first cause of action, but the judgment is reversed, and the cause remanded for trial upon the count for maintenance and cure.