## McGHEE v. UNITED STATES.
### No. 77, Docket 20748.

Circuit Court of Appeals, Second Circuit.
Dec. 8, 1947.

George Whitefield Betts, Jr., and John F. X. McGohey, U. S. Atty., both of New York City (Hunt, Hill & Betts and Helen F. Tuohy, all of New York City, of counsel), for appellant.

Jacquin Frank and William L. Standard, both of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

When this case was before us upon the first appeal, we were not satisfied that the libellant had proved that the ship's plates had been strained on the first voyage; or that the ballast had been improperly stowed on the second, and that the stowage had also contributed to the eventual cracking of the plates on March 5, 1943; and we sent the case back for re-examination of these two issues.[1] At that time the only testimony as to negligence except the libellant's came from the respondent's witnesses, Hathaway and Nesbit; and we found it too contradictory and in general too unsatisfactory to support the findings. (The libellant then argued that this insufficiency in the testimony of the respondent was not a ground for sending back the cause; but in that he was mistaken, since, as we have just said, he had to rely upon the respondent's witnesses to make out a case of negligence at all.) Upon the second trial Hathaway and Nesbit were re-called and re-examined at length; and the evidence as a whole ranged much further afield. The libellant put on one, Archer, as an expert, who testified that the inadequate ballast on the first voyage had contributed to the final cracking of the plates, and that improper stowage of the ballast on the second had done the same. The respondent also added largely to the testimony on its side; it called several experts, among them two, Stover and Vasta, who testified upon the basis of experiments as to the tension which could have been set up in plates under the conditions to which the Hooker had been exposed, and to the breaking strains of such plates. The judge concluded that Hathaway and Nesbit had

---

[1] McGhee v. United States, 2 Cir., 154 F.2d 101, 106.

been right in their opinions on the first trial; he found that the plates cracked on March 5th in part because of the strains on the first voyage, and in part because the ballast was improperly stowed on the second; and he answered in the affirmative both questions which we put to him. He also held that the Hooker was unseaworthy when she broke ground, and he entered a decree for damages in the same amount as upon the former appeal upon both grounds.

My brothers are satisfied that we should not be warranted in holding that the findings of negligence were "clearly erroneous"; and since, if so, the decree was right, they deem it unnecessary to go further. Personally, I do not think it necessary to decide that the testimony of Stover and Vasta was not conclusive in the respondent's favor on the issue of negligence. I should be the last to hold, when the judge has seen the witnesses, as in this case he did with a single exception, that on the issue of credibility we were in a position to overrule him. Indeed, we said upon the earlier appeal that "the record does not preserve many of the factors which may have made that opinion persuasive": i. e., Hathaway's. I should not, therefore, venture to differ with the judge's conclusion that Hathaway and Nesbit spoke their honest opinions on the first trial; but that does not mean that the testimony of Stover and Vasta should not overbear that of the other two and of Archer. Nobody could reasonably question the truth of the experiments on which they based their conclusions; and I should not be willing to treat findings as conclusive if they contradicted inferences rationally inevitable from scientific data. I prefer to rest my vote upon the finding of unseaworthiness, without deciding whether the finding of negligence should stand.

When the "Hooker" broke ground on February 21, 1943, she was not fit for the voyage on which she was embarked: a west bound trip from Scotland to this country in March. The highest wind she encountered was only number seven on the Beaufort Scale—35 miles, a "moderate gale"—and it must be seldom that a ship does not encounter as severe weather on such a trip. Although there was some testimony as to an exceptional sea shortly before she "hogged," nothing occurred which an able ship would not have withstood. Whether she would have lived, had she been otherwise ballasted on either or both trips, it is not necessary to say; and whether—in the light of their later history—"Liberty" ships were originally seaworthy, when ballasted like the "Hooker," is also not material; although it must be remembered that upon the issue of seaworthiness later experience is relevant, though it was not available at the time. If she was unseaworthy in fact, even though it was nobody's fault, McGhee could recover.[2] To this the respondent answers that, having elected originally and throughout the first trial, to stand upon § 33 of the Jones Act,[3] McGhee irretrievably committed himself to proving that the respondent was negligent, and abandoned any right he had to recovery for unseaworthiness, simpliciter. Section 33 of the Jones Act[3] provides that a seaman "may, at his election, maintain an action * * * at law" in which his rights are measured by those of a railway employee; and in Panama R. Co. v. Johnson,[4] the court said, although in discussing quite another question, that the act left his maritime right of action to the seaman as an "alternative" to that under the Jones Act. In Engel v. Davenport,[5] the question was whether the statute of limitations applicable to railway employees governed an

---

[2] The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 259, 42 S.Ct. 475, 66 L.Ed. 927; The Arizona v. Anelich, 298 U.S. 110, 120, 56 S.Ct. 707, 80 L.Ed. 1075 et seq.; Mahnich v. Southern S. S. Co., 321 U.S. 96, 100, 64 S. Ct. 455, 88 L.Ed. 561; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099; Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490, 494, certiorari denied 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701; The H. A. Scandrett, 2 Cir., 87 F.2d 708, 710; German v. Carnegie-Illinois Steel Corp., 3 Cir., 156 F. 2d 977, 979.

[3] § 688, Title 46 U.S.C.A.

[4] 264 U.S. 375, 392, 44 S.Ct. 391, 68 L.Ed. 748.

[5] 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813.

action brought by a seaman under the Jones Act in a state court. The plaintiff had declared for injuries suffered from a defective appliance and had charged that the defect was negligent. The court held that he was privileged to base his recovery upon the Jones Act; and that, if he did, he was free to take advantage of the longer limitation applicable to that cause of action than the state statute would have allowed, had he sued under the maritime law. That did indeed recognize a cause of action under the Jones Act for negligent unseaworthiness, additional to that under the maritime law; and obviously the plaintiff was bound to prove negligence, if he wished to invoke the longer period. Pacific Steamship Co. v. Peterson,[6] held no more than that a seaman who had received maintenance and cure might still sue under the Jones Act, although during the discussion (278 U.S. p. 138, 49 S.Ct. 77) Sanford, J., repeated that that action was an "alternative" to an action to recover indemnity for unseaworthiness. In Kunschman v. United States,[7] we held that when the seaman had died, the shipowner's liability did not survive, and that his administratrix was obliged to prove that the ship's unseaworthiness had resulted from the owner's negligence. It was not a cause of "election" at all, any more than was Engel v. Davenport, supra,[8] for the right under maritime law was no longer available.

 We do not mean that a seaman may go to trial on both causes of action simultaneously, and recover upon one or the other as the evidence turns out; we said the opposite in Skolar v. Lehigh Valley R. Co.[9] Had McGhee gone to trial upon his libel as filed, we will assume arguendo that he would have elected to prosecute only claims under the Jones Act, and that he could not recover without proof of negligence, for, not only did he charge negligent unseaworthiness, but he coupled with that charge other claims which could be valid only under the Jones Act. However, he did not go to trial upon the libel as filed. The respondent put interrogatories to him before trial, and in his answers he limited his recovery to the ship's unseaworthiness, although he continued to charge that this was the result of negligence. Had this added allegation—negligence—been necessary to his recovery for unseaworthiness, as it was in Engel v. Davenport, supra,[10] and in Kunschman v. United States, supra,[11] he would of course have had to prove it. We may also assume that he would have had to do so, if any of the incidents of the two claims had differed: e. g., if contributory negligence was a bar to one and not to the other; or, if he would have had to divide his damages under the maritime law, instead of suffering a reduction proportionate to his fault. But there were no such differences, for under the maritime law, as under the Jones Act, the doctrine of proportionate fault obtains.[12] Thus, if he forfeited his maritime right, it is because, without joining any claim valid only under the Jones Act, his proctor added to the charge of unseaworthiness the wholly irrelevant allegation of negligence; and we do not believe that the doctrine of "election" extends to such a situation. If it does, the consequence is the loss of the larger and more ancient right, because of the seaman's carelessness or ignorance. It is one thing to do that when he seeks the advantage of the statute; it is another to punish him for a mere mistake of law. The second is not only always unjustifiable, but is contrary to all modern notions of procedure.

The decree will be affirmed, but modified so as to allow interest on the award from the date of the first decree: July 20, 1945.

---

[6] 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220.

[7] 2 Cir., 54 F.2d 987.

[8] 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813.

[9] 2 Cir., 60 F.2d 893.

[10] 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813.

[11] 2 Cir., 54 F.2d 987.

[12] The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 84 L.Ed. 586; American Stevedores v. Porello, 330 U.S. 446, 458, 67 S.Ct. 847 (semble); Stokes v. United States, 2 Cir., 144 F.2d 82; Kreste v. United States, 2 Cir., 158 F.2d 575.