BALADO v. LYKES BROS. S. S. CO., Inc.

No. 142, Docket 21529.

United States Court of Appeals Second Circuit.

Argued Jan. 12, 1950.

Decided Feb. 6, 1950.

Paul C. Matthews, New York City, and Robert E. Connolley, New York City, for plaintiff.

Tompkins, Boal & Tompkins, New York City, and Arthur M. Boal, New York City, for defendant.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was originally brought under the Jones Act, 46 U.S.C.A. § 688, by a fireman aboard the defendant's vessel Genevieve Lykes. About March 10, 1944, heavy seas were encountered by the ship and the iron door leading from the deck to the crew's messroom was found to be in a sprung condition, whereby sea water was entering the messroom. The plaintiff had gone to his quarters and was asleep. About midnight the chief engineer woke him up and ordered him to help bail out the water. He complied, and worked for more than an hour bailing out water which splashed back and forth with the rolling of the ship and— according to his testimony—soaked him from head to foot. He began to feel sick later than night and reported that fact to the engineer. He nevertheless continued to attend his watches until April 7, 1944, when he was hospitalized at the United States Public Service Hospital, Panama Canal Zone, and a diagnosis of pneumonia was made. On May 11, 1944, he was discharged from the hospital as well. Later, however, he developed a lung abcess. On July 15, 1944, he entered the Marine Hospital at Staten Island, and had some fourteen operations there for the collapsing of a lung and the removal of ribs on one side of his chest. He has been in the hospital, with but short interruptions for the past five and one-half years.

The plaintiff in his complaint alleged that the safety statute, 46 U.S.C.A. § 673, was violated, which so far as material is set forth in the margin,[1] in that (1) the defendant compelled him to work in the deck department in order to bail out the messroom although he had been regularly assigned to the engine-room, and (2) required him on that day to work more than eight hours. On appeal, he argues (1) that the trial court erred in its instructions to the jury as to the applicability of the safety statute, and (2) that the trial court refused to instruct the jury that the defendant was absolutely liable for any damages resulting from unseaworthiness.

After all the evidence was in the plaintiff asked for leave to amend the complaint by adding a claim that the vessel was unseaworthy because the door to the messroom was sprung so as to let in the sea water and that he was entitled to recover any damages caused by the unseaworthiness. The request was granted, whereupon the court proceeded to charge the jury that the plaintiff could recover, either under the Jones Act for negligence, if found to have caused his injuries, or for unseaworthiness of the vessel, if that was found to be the proximate cause. We think the charge in respect to liability for negligence was favorable to the plaintiff. The jury was allowed to determine whether the chief engineer properly exercised his discretion in calling upon the plaintiff to do work other than that for which he was primarily assigned, namely, in the engine room. It seems hard to suppose that there was not an emergency which justified the engineer in calling on the plaintiff to help bail out the water in the messroom or that on the evidence there was any improper exercise of discretion. There can be no doubt that the condition of the messroom, with a considerable depth of sea water swishing back and forth, might well be regarded as an unfit place in which to serve meals and dan-

1. "In all merchant vessels of the United States of more than one hundred tons gross, * * * the licensed officers and sailors, coal passers, firemen, oilers, and water tenders shall, while at sea, be divided into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel * * *. The seamen shall not be shipped to work alternately in the fireroom and on deck, nor shall those shipped for deck duty be required to work in the fireroom, or vice versa; nor shall any licensed officer or seaman in the deck or engine department be required to work more than eight hours in one day; but these provisions shall not limit either the authority of the master or other officer or the obedience of the seamen when in the judgment of the master or other officer the whole or any part of the crew are needed for maneuvering, shifting berth, mooring, or unmooring, the vessel or the performance of work necessary for the safety of the vessel, her passengers, crew, and cargo * * *."

gerous to the health and comfort of the crew, and that the chief engineer might be thought to have the discretion to call upon the plaintiff to bail out the messroom and work for more than eight hours in so doing if he regarded the performance "necessary for the safety of the vessel, her passengers, crew, or cargo."

The principal question is whether the judge was right in refusing to charge, as the plaintiff requested, that if the vessel was found to be "unseaworthy and that unseaworthiness was the proximate cause of [the plaintiff's] illness, * * * the defendant is absolutely liable." The trial judge replied to the request: "That is what I charged them"; to which the plaintiff's counsel said: "I did not understand it. Exception." The judge had said in his charge: "The owner owes each member of the crew, this plaintiff in particular, a seaworthy vessel, that is a vessel that is calculated to meet all the risks of its trip or voyage on which it sets out." But he added: " * * * you will have to determine whether she sailed with a sprung door and whether the defendant should have known the door was sprung. * * *"

■ If the vessel started out with a door that was sprung or was otherwise inadequate to keep sea water from entering the crew's messroom, and there was evidence from which a jury might find that the ship sailed in such a condition and that the plaintiff's injuries were caused by it, the owner was liable for sailing with an "unseaworthy" vessel irrespective of negligence or knowledge of the condition of the vessel prior to her sailing. The H. A. Sandrett, 2 Cir., 87 F.2d 708. In the circumstances, there is confusion as to the meaning of the charge and doubt whether the judge did not intend to require the jury to find not only that the door was sprung before the ship sailed but also to find defendant ought to have known that the door was sprung before liability for unseaworthiness could be imposed.

■ In deciding this appeal, we do not have to determine the question whether the plaintiff was required to elect whether to claim damages because of the unseaworthiness of the defendant's vessel or because of the negligence of the officers and crew. He in fact attempted to prove his claim on both theories, and, having been allowed two strings to his bow, he can hardly complain if he failed to recover on either. We rest our disposition of the appeal solely upon the ground that because of confusion or ambiguity in the charge the jury may have been led to suppose that liability for unseaworthiness was dependent on whether the owner ought to have known of the defective door at the time the ship sailed. In other words, the jury might have believed that even if the ship sailed with a sprung door the owner would not be liable unless he ought to have known of the defect.

■ The question whether the plaintiff must elect whether to claim damages under the Jones Act for negligence, or under maritime law for unseaworthiness before submitting his claims to a jury may perhaps be raised on a new trial because of certain dicta in our decisions in Skolar v. Lehigh Valley R. Co., 60 F.2d 893, 894, and McGhee v. United States, 165 F.2d 287. On this matter of election of remedies we find the analysis by Judge Maris [2] of the opinion of the Supreme Court in Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069, most persuasive. In accordance with the view there expressed we think there will be no necessity for such an election in the future. In our opinion, election is required by the Jones Act only between a trial by jury and a suit in admiralty. Here that election was made when the plaintiff brought his action at law under the Jones Act. On the evidence before us we can discover no proof of negligence on the part of the defendant which caused any injury to the plaintiff. If the plaintiff can sustain any claim for damages it will be founded on proof that the ship was unseaworthy when she sailed, and not on negligence of the officers and crew.

Judgment reversed and cause remanded with direction to proceed in accordance with the views expressed in this opinion.

2. McCarthy v. American Eastern Corporation, 3 Cir., 175 F.2d 724.