ROBERT TAYLOR, Appellant, *v.* CENTRAL RAILROAD COMPANY OF NEW JERSEY, Respondent.

First Department, October 20, 1959.

*Donald S. Sherwood* of counsel (*Jerome Golenbock* with him on the brief; *Gussie Kleinman*, attorney), for appellant.

*Vincent E. McGowan* for respondent.

BREITEL, J. In a personal injury action defendant obtained a verdict and judgment of dismissal of the complaint after jury trial. Plaintiff appeals, assigning as error a refusal of the trial court to charge the jury as requested. The second cause of action of the complaint alleged both negligence and unseaworthiness under the Jones Act (U. S. Code, tit. 46, § 688) and the classic maritime law (*O'Donnell* v. *Great Lakes Co.*, 318 U. S. 36, especially 43). As a consequence there was involved the issue whether plaintiff was entitled to go to the jury on a charge permitting recovery for unseaworthiness of the vessel on which he was injured. It is concluded that plaintiff was entitled to such a charge and, therefore, the judgment must be reversed and a new trial granted.

Plaintiff was a bridge carpenter whose duties consisted mainly in the maintenance of docks. He sustained personal injuries on February 3, 1953, while in defendant's employ and while working on its lighter tied to a dock at Jersey City on the Hudson River. At the time of the injury, plaintiff was foreman of a crew of men who were engaged in removing scrap lumber from the inshore end of the dock, placing it on the lighter, and then transferring it to freight cars on the offshore end of the dock.

The lighter was equipped with slings, tongs, a winch, and a steam-operated boom. It had no electric lights, navigation lights, or a Coast Guard certificate. The lighter had no means or device for self-propulsion. It was moved along the dock by winch-operated lines, and was towed from one dock to another in the harbor by tugboat. It also appears that the lighter may have been used to transfer cargo from one boat to another.

The injury to plaintiff occurred when a 12-foot beam was being lifted by tongs. Due to the rotted condition of the wood, the beam gave way and fell upon plaintiff. Plaintiff admitted that he had seen similar beams break on prior occasions but had never told anybody or done anything about it until after the accident. He also admitted that it was his duty as foreman to advise his employer of any defects in equipment and to see that the operation was conducted properly. He testified that the boom and tongs were in good condition, that nothing was wrong in the way that the tongs had been hooked; but that nets had never been furnished for use in removing the lumber.

In its charge the court submitted to the jury the question whether plaintiff was a seaman within the meaning of the Jones Act and the classic maritime law, and instructed that unless the jury found that plaintiff was a seaman, a verdict for defendant

must be rendered. The court also instructed the jury on the question of negligence, correctly noting that any contributory negligence on plaintiff's part would but serve to reduce the amount of his damages.

The court, however, declined to charge on the question of seaworthiness. Thus, plaintiff's requests that the jury be instructed that the owner of a vessel has a duty to provide a seaworthy vessel, that a vessel is seaworthy when it is fit, adequate and proper for the use for which it is intended, and that a shipowner's liability for failure to furnish a seaworthy vessel is a species of liability without fault were refused. It is these failures to charge, to which exceptions were taken by plaintiff, that are assigned as error.

Since *The Osceola* (189 U. S. 158, 175), it has been settled that the owner of a vessel is obligated to seamen in its service to furnish a vessel which is seaworthy with respect to its appurtenant appliances and equipment (2 Norris, Law of Seamen, § 613). A claim based on the owner's breach of this duty is not the same as one based on negligence. Moreover, it is of the nature of an absolute liability, that is, one that does not depend upon a showing of fault (*Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, 94, 100). Thus, when seaworthiness is at issue, it matters not that the owner may have used all care and diligence in equipping the vessel or that the owner lacked knowledge of the defective condition (*Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255, 259; *Sprague* v. *Texas Co.,* 250 F. 2d 123; *Balado* v. *Lykes Bros. S. S. Co.,* 179 F. 2d 943; 2 Norris, *op. cit.,* § 619).

A good statement of the distinguishing standards is found in *Cox* v. *Esso Shipping Co.* (247 F. 2d 629, 637): "One is an absolute duty, the other is due care. * * * The owner has an absolute duty to furnish reasonably suitable appliances. If he does not, then no amount of due care or prudence excuses him, whether he knew, or could have known, of its deficiency at the outset or after use. In contrast, under the negligence concept, there is only a duty to use due care, i.e., reasonable prudence, to select and keep in order reasonably suitable appliances. Defects which would not have been known to a reasonably prudent person at the outset, or arose after use and which a reasonably prudent person ought not to have discovered would impose no liability."

The distinction between the two duties in the context of this case is readily apparent. Here, plaintiff's basic contentions were conjunctive, namely, that defendant's failure to supply a net for use in removing the rotted lumber constituted negligence

and also that the omission to have such additional equipment made the lighter unseaworthy. On the negligence claim, defendant's lack of awareness of the danger, when considered with plaintiff's admitted duty and failure to report in advance any defects in equipment, may well have been the controlling factor in leading the jury to render a verdict for defendant under the charge as given. On the unseaworthiness claim, however, such factors would be immaterial. Thus, in the perspective of this case, the trial court's refusal to submit plaintiff's claim based on unseaworthiness was unwarranted and prejudicial.

By virtue of the foregoing, and as conceded by defendant at oral argument, the case must be remanded for a new trial unless plaintiff was, as a matter of law, not a " seaman ", or the lighter was not a vessel, all within the meaning of the applicable law. On this record, no such conclusion may be reached.

The Jones Act does not define the word " seaman ". In making provision for a cause of action in his behalf, it merely refers to " Any seaman who shall suffer personal injury in the course of his employment " (U. S. Code, tit. 46, § 688). True, section 713 of title 46, defines the terms " seaman " and " vessel ". The section, however, is by its own terms only applicable to title 53 of the Revised Statues which antedates the Jones Act. (See *Warner* v. *Goltra*, 293 U. S. 155, especially 160–162.)

It is decisional maritime law, however, that whether an individual is a seaman " depends largely on the facts of the particular case and the activity in which he was engaged at the time of injury." (*Desper* v. *Starved Rock Ferry Co.*, 342 U. S. 187, 190.) No universally applicable definition has ever been evolved, although it is settled that, where the owner of the vessel is plaintiff's employer, the benefits of the applicable law have been restricted " to the members of the crew of a vessel plying in navigable waters ". (*Swanson* v. *Marra Bros.*, 328 U. S. 1, 7.)*

This definition, even as restricted, is applicable here if plaintiff was a member of a crew and the lighter was a vessel in navigation. Each of these terms, however, presents its own difficulties. The word " crew ", in a general sense, is equivalent to " ship's company ", but " does not have an absolutely unvary-

---

* Where plaintiff is employed by another, a different rule obtains. Thus, a harbor worker employed by an independent contractor is considered a seaman within the Jones Act and could sue the owner of a vessel for injuries resulting from unseaworthiness. (See *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85, 100, *supra*.) Compare, too, the situation where the injured person is not " a member of the crew ", but does the type of work traditionally done by the ship's crew. (*United Pilots Assn.* v. *Halecki*, 358 U. S. 613, 617.)

ing legal significance ''. (*South Chicago Co.* v. *Bassett,* 309 U. S. 251, 258.) '' The word ' vessel ' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water ''. (U. S. Code, tit. 1, § 3.) But, whether a vessel is in navigation depends on the facts and usually may not be determined as a matter of law. (*Nelson* v. *Greene Line Steamers,* 255 F. 2d 31, cert. denied 358 U. S. 867.)

Recent decisions in the United States Supreme Court in this field show that only in the clearest cases may these questions be determined as a matter of law. (For a collection of·cases generally in the area and over the years since *The Osceola,* 189 U. S. 158, *supra,* see 2 Norris, *op. cit.,* §§ 651–656.)

Thus, in *Grimes* v. *Raymond Concrete Pile Co.* (356 U. S. 252), a pile driver, who had been employed in the installation of a Texas tower, had been sent to a nearby barge to prepare for transfer of materials from the barge to the tower. The barge had no crew and was used solely to transport construction materials to the tower. While being transferred from a tug back to the tower in a Navy life ring, the pile driver was injured. Despite the fact that the tower had already been placed in its permanent position, that is, affixed to the bottom, the court expressly held that whether or not the pile driver was a member of a crew of any vessel was a question of fact for the jury.

So, too, in *Butler* v. *Whiteman* (356 U. S. 271) there was involved a tug which had been withdrawn from navigation because it was inoperable. It was being rehabilitated preparatory to a Coast Guard inspection. The tug had neither captain nor crew and the only evidence of its movement during the 10 months prior to plaintiff's injury related to an occasion when the tug was towed to dry dock. The court held that whether or · not the tug was in navigation was a question of fact for the jury.

Applying the analysis to the case at hand, the proper rule to be applied follows quite naturally. Although plaintiff did not sleep on board, he was responsible for keeping the lighter in repair, handled its lines during the course of its limited movement, and operated the equipment thereon. The injury here occurred while the lighter was engaged in transporting lumber on water and, to the extent that the lighter had a crew, plaintiff was a member thereof. Or a jury could so find.

In similar vein does it appear that there was a question of fact whether the lighter was a vessel in navigation. That the lighter had no Coast Guard certificate and all the facts tending to show that plaintiff lacked permanent connection with the lighter were relevant, but on this record, in the light of the cases,

a holding may not be made, as a matter of law, that plaintiff was not a seaman, or that the lighter was not a vessel in navigation, within the meaning of the Jones Act.

It follows from what has been said that plaintiff was entitled to a charge to the jury in accordance with the requests made in order that the issue of unseaworthiness would be passed upon by the jury. While the trial court appreciated that there was an issue whether plaintiff was a seaman, it refused to charge with regard to the correlative matters involving the unseaworthiness of the vessel and the consequences that would follow from any finding of unseaworthiness. As a result there is no choice but to direct a new trial.

Accordingly, the judgment in favor of defendant should be reversed, as a matter of law, the verdict vacated, and a new trial granted, with costs to abide the event.

BOTEIN, P. J., RABIN, M. M. FRANK and McNALLY, JJ., concur.

Judgment unanimously reversed, as a matter of law, the verdict vacated, and a new trial ordered, with costs to abide the event.